**UNITED STATES of America**
**v.**
**KUM SENG SEO, Appellant.**

No. 13686.

United States Court of Appeals
Third Circuit.

Argued Jan. 9, 1962.

Decided March 22, 1962.

Donald A. Robinson, Newark, N. J., for appellant.

David M. Satz, Jr., U. S. Atty., Newark, N. J. (John H. Yauch, Jr., Asst. U. S. Atty., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and GANEY, Circuit Judges.

BIGGS, Chief Judge.

The defendant-appellant, Kum Seng Seo, a fifty-two year old woman native of the Republic of Korea, was found guilty under a single-count indictment charging her with receiving and concealing four ounces of heroin in violation of Section 174, Title 21 U.S.C.A. She is presently serving a five-year sentence. One narrow but important point is raised by this appeal.

The trial commenced on Thursday, April 27, 1961 at Newark, New Jersey. The next day, Friday, April 28, the "Newark Evening News", a newspaper of general circulation, on page 20 of its "Sports Final" edition published a story entitled "Grandmother Before Court". This news article stated:

> "Mrs. Kum Seng Seo, a 52-year-old grandmother of Seoul, South Korea, is on trial before Federal Judge Thomas F. Meaney and a jury on a charge of possession of four ounces of heroin with a retail value of $15,000.

> "The trial began yesterday. Asst. U. S. Atty. Daniel E. Isles called as witnesses agents of the Federal Narcotics Bureau and the U. S. Customs Service. They told of finding the heroin in Mrs. Seo's room Feb. 27 while she was visiting her daughter who is married to an Army sergeant.

> "Authorities said the heroin was in a parcel post package mailed from Ft. Bragg, N. C., as a $4 doll and a $1 pair of shoes. They said there were indications that the contents had been mailed by an American soldier in South Korea to a soldier in Ft. Bragg.

> "Mrs. Seo is in the Hudson County Jail in default of $100,000 bail."

Mrs. Mary Corsaky, a juror sitting in Mrs. Seo's case, read the article the same day that it appeared, April 28, 1961, cut

it out of the newspaper and put in her pocketbook. What happened thereafter is not entirely clear but according to Mrs. Corsaky's own testimony, "Just a minute or so before" the jurors voted on the guilt or innocence of the defendant, Mrs. Corsaky took the clipping from her pocketbook and, saying "Look what I found in the paper," passed the clipping to one of the male jurors who read it. According to the testimony of another juror, Koson, the clipping was passed "all around the jury room" about an hour prior to the vote and was handled and looked at by the jurors. Both Mrs. Corsaky and Mr. Koson testified that their vote on the verdict was not influenced by reading the article. No other jurors than the two named were examined as to what took place in respect to the examination of the article by the members of the panel prior to the vote.

The use of the news article in the jury room was called to the attention of the defendant's counsel by a telephone call made to him by a juror. The defendant then filed a motion for a new trial pursuant to Rule 33, Fed.R.Crim. Proc., 18 U.S.C. The trial court concluded that the circumstances did not require a new trial.[1] We cannot agree.

This case is ruled by Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). In Marshall the trial judge had refused to permit the United States to introduce evidence that the defendant, prior to the occurrence of the events for which he was being tried, had practiced medicine without a license. During the course of the trial two newspapers containing material damaging to Marshall got before seven members of the jury. One newspaper article said that he had practiced medicine without being properly licensed and had a record of two felony convictions. The other article indicated that he had

"acted as a physician" and prescribed restricted drugs for a country singer before the latter's death and also had served a term in jail for forgery. The trial judge called the jurors into his chambers one by one and inquired if they had seen the articles. It appeared that three jurors had read the first article referred to and that one juror had read both articles. Three other jurors had scanned the first article and one of those had also seen the second. Each juror of the seven referred to told the trial judge that he would not be influenced by the news articles and that he felt no prejudice against Marshall because of them. The trial judge, concluding there was no prejudice, denied the motion for a mistrial. The Court of Appeals for the Tenth Circuit affirmed, 258 F.2d 94, Circuit Judge Murrah dissenting.

The Supreme Court, while noting that the trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial, Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), stated that the jurors in Marshall were exposed to "information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence." The Court went on to say: "The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. * * * It may indeed be greater for it is then not tempered by protective procedures." The judgment was reversed and a new trial was granted.

The case at bar differs in some respects from that of Marshall. We do not consider it to be decisive under the circumstances that the trial judge examined only two jurors and no more, though this too brief examination left the posi-

---

1. The trial judge stated: "No, Mr. Robinson, I don't think there is anything in this article which was of such significance as would affect the jurors to the extent that they would ignore their oath. I think that they considered the matter, and each of the jurors who were primarily concerned say they were not affected by it, and there is no reason to imagine that any of the others were affected by it. I shall deny your motion."

tion of ten jurors unascertained. See Krogmann v. United States, 225 F.2d 220, 228–229 (6 Cir. 1955). It is of grave consequence, however, that the Newark Evening News article was produced by Mrs. Corsaky and circulated a short time before the voting on the verdict by the jurors. A more critical moment would have been difficult to find. No such element was present in Marshall. At this most important juncture in the case, the jury became aware of the extremely high bail set for this defendant and her detention in jail, facts inadmissible in evidence. Had the prosecution brought these facts to the attention of the jury and had the trial judge immediately directed the jury to disregard them in the strongest of language, a difficult issue of whether or not the prosecution's comment was so prejudicial as to require a new trial would still remain for determination. Here information of bail so high as to engender suspicion that the defendant perhaps was a notorious or dangerous criminal went naked to the jury, without any opportunity for palliation by the trial judge.

But this is by no means all. The defense offered by Mrs. Seo was that the heroin belonged not to her, but to her daughter, Heja. The newspaper spoke of agents of the United States "finding the heroin in Mrs. Seo's room".[2] There is no such evidence in the record. The heroin was found in a suitcase owned by Mrs. Seo, but according to uncontroverted testimony of a defense witness, the suitcase was handled and used by Heja as well as the defendant. This suitcase was discovered in a large closet in the living-room of the ground floor apartment. Both the living-room and the closet were used by numerous occupants other than the defendant, including her daughter Heja. Thus during the course of their deliberations, the jury had before them a printed statement from an unknown source, not subjected to cross-examination or even to examination. If the jury believed the report that the heroin was found in Mrs. Seo's room, this would tend to substantiate the theory asserted by the United States that she, rather than her daughter, had possessed and therefore had received and concealed the heroin.

Traditionally this court has taken the position, even in civil cases, that verdicts would be set aside where there was evidence that the impartiality of the tribunal had been affected or that tainted material had come before a jury. See McKibben v. Philadelphia & Reading Railway Co., 251 F. 577 (3 Cir. 1918). In criminal cases our rule has been strict. See Griffin v. United States, 295 F. 437 (3 Cir. 1924). The rule of other courts of appeals has been equally so. See Briggs v. United States, 221 F.2d 636 (6 Cir. 1955). But whatever may have been the law prior to Marshall, since that decision it has been clear that a new trial should be granted in federal criminal cases when it is shown that members of the jury have read news accounts containing inadmissible and inaccurate facts prejudicial to the defendant.[3] See United States v. Vita, 294

---

2. There are other statements in the news article which are not borne out by any evidence in the record, but we find it unnecessary to discuss them.

3. Cases finding the Marshall rule inapplicable are distinguishable from the case at bar. See United States v. Vita, 294 F.2d 524, 527 (2d Cir. 1961) (article "innocuous"); United States v. Shaffer, 291 F.2d 689, 694–695 (7 Cir.), cert. denied, 368 U.S. 915, 82 S.Ct. 192, 7 L. Ed.2d 130 (1961) (defendant had opportunity to remove by peremptory challenge those jurors who had read the articles,

but declined to do so); United States v. Carlucci, 288 F.2d 691, 694–697 (3 Cir.), cert. denied, 366 U.S. 961, 81 S.Ct. 1920, 6 L.Ed.2d 1253 (1961) (evidence showed that none of the members of the jury had read the accounts, merely that some had glanced at the headlines); United States v. Coduto, 284 F.2d 464, 467–468 (7 Cir. 1960), cert. denied, 365 U.S. 881, 81 S.Ct. 1027, 6 L.Ed.2d 192, (1961) (no evidence that any of the jurors had read the articles); United States v. La Barbara, 273 F.2d 547, 549 (2 Cir. 1960) (same circumstances). United States v. Crosby, 294 F.2d 928,

F.2d 524, 527 (2 Cir. 1961); Holmes v. United States, 284 F.2d 716, 718–719 (4 Cir. 1960); Coppedge v. United States, 106 U.S.App.D.C. 275, 272 F.2d 504 (1959); United States v. Alker, 180 F. Supp. 661 (E.D.Pa.1959). Under Marshall v. United States the defendant is entitled to a new trial.

The judgment of conviction will be reversed. The case will be remanded with the direction to grant a new trial.

948–950 (2 Cir. 1961) is not so easily placed in this category, although the court did note that the "situation here presented is a far cry from the infinitely more damaging information obtained by the jury in Marshall".