UNITED STATES of America, Appellee,

v.

Virginia MILANOVICH, Appellant (two cases).

Nos. 8493 and 8613.

United States Court of Appeals Fourth Circuit.

Argued March 19, 1962.

Decided April 30, 1962.

Addendum Filed June 4, 1962.

Calvin H. Childress and Herbert S. Reid, Jr., Norfolk, Va., for appellant.

Roger T. Williams, Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on the brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOBELOFF, Chief Judge.

In December, 1958, Virginia Milanovich was tried and convicted on an indictment charging larceny and receiving under 18 U.S.C.A. § 641. She was sentenced to ten years imprisonment on the larceny count and five years on the receiving count, the sentences to run concurrently. On appeal, this court reversed her conviction for receiving but affirmed as to the larceny. Milanovich v. United States, 275 F.2d 716 (4 Cir., 1960). The Supreme Court reversed our decision and ordered a new trial. Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961). Tried again, she was found guilty of larceny and sentenced a second time to ten years imprisonment.[1]

This is her appeal from that conviction. Her chief complaint is that certain evidence introduced by the Government at the trial was seized by federal officers in violation of the Fourth Amendment. The District Court ruled that it would not consider the objection, on the ground that no motion to suppress the evidence had been made prior to trial, as prescribed by Rule 41(e), Fed.R.Crim.P. 18 U.S.C.A., and no excuse was offered for this failure and, on the alternative ground based on the merits, that the facts failed to show an illegal search and seizure.

The alleged illegal seizure occurred on June 19, 1958, when federal officers went to the Milanovich home to arrest Mike Milanovich, Virginia's husband, who was suspected of involvement in two recent robberies of United States naval bases in Virginia. They had a warrant for his arrest, which was duly executed. While there, the officers, in the presence of Virginia Milanovich, obtained her husband's consent to search the house. Pursuant to his written authorization on a "consent to search" form, the officers searched the house and in a closet in the guest bedroom found an overnight bag containing about $500.00 in wrapped silver coins identified as having been stolen from the naval base. At that time Virginia Milanovich admitted ownership

1. As directed by the Supreme Court, the District Court submitted both the larceny count and the receiving count to the jury with an instruction that they could find the defendant guilty of only one of the charges. Milanovich v. United States, 365 U.S. 551, 555–556, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961).

of the bag but denied possession, stating that she had loaned it to the friend then staying at the Milanovich home. The bag and contents were confiscated by the officers, and it is in respect to the seizure of this evidence that the defendant claims a violation of her constitutional rights.

The defendant was indicted and arrested on July 16, 1958, and her first trial was held on December 10 of that year. No motion to suppress was filed prior to that trial, and, indeed, the evidence here challenged was introduced there against Virginia and her co-defendant husband without objection. The Supreme Court's mandate ordering a new trial was handed down on April 25, 1961. Again no motion to suppress was made in the several months preceding the second trial on September 25, 1961. Only when the Government tendered the evidence on the second day of the second trial was the objection interposed and the illegality of the search asserted for the first time.

■ Under these circumstances, we think that the District Court acted within the bounds of its discretion in declining to entertain the objection. Rule 41(e) provides in relevant part that "the motion [to suppress] shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing." Clearly the present case does not fall within the specified exceptions. Ample time existed for making the motion (five months before the first trial and another five months before the second), and indisputably the defendant had full knowledge of the circumstances of the seizure. See Isaacs v. United States, 283 F.2d 587 (10th Cir., 1960); United States v. Romero, 249 F.2d 371, 374 (2d Cir., 1957); United States v. Chieppa, 241 F.2d 635, 637–638 (2d Cir., 1957); cf. Jones v. United States, 362 U.S. 257, 264, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

Still, we would be loath to hold that, for the sake of procedural orderliness, the defendant was disqualified from pressing her claim during the course of trial if some explanation had been made to appear for her failure to comply with Rule 41(e), other than neglect. Cf. Gouled v. United States, 255 U.S. 298, 312–313, 41 S.Ct. 261, 65 L.Ed. 647 (1921);[2] Ganci v. United States, 287 Fed. 60, 66–67 (2d Cir., 1923). Nothing of this character is offered. True, the defendant's present attorneys did not enter the case until a week before the second trial, but she had almost constant legal representation from the time proceedings were begun against her in 1958.

In addition, we think that the defendant is not in a position to avail herself of the rule announced in Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921). There the testimony of government witnesses at the trial showed a clear violation of Fourth Amendment rights, and the Court held that in those circumstances the trial judge had no discretion to decline to consider the objection to the evidence even though advanced while the trial was in progress. Here, in contrast, it is far from clear that there was an illegal search and seizure; seemingly Mrs. Milanovich's acquiescence when her husband consented to the search was part of a deliberate design on her part to cast full responsibility for the presence of the stolen money upon either her husband or the house guest. Refusal to entertain the belated objection was not error.

2. In the Gouled case, the Court had this to say about the application of the then prevailing rule, which has been substantially incorporated in Rule 41(e), that courts in criminal trials will not pause to determine how the possession of evidence tendered has been obtained: "While this is a rule of great practical importance, yet, after all, it is only a rule of procedure, and therefore it is not to be applied as a hard and fast formula to every case, regardless of its special circumstances. We think rather that it is a rule to be used to secure the ends of justice under the circumstances presented by each case, * * *." 255 U.S. at 312, 41 S.Ct. at 266.

A second issue presented on this appeal relates to the conduct of the special assistant to the Attorney General of the United States, assigned to prosecute this case for the Government. Raised on a motion for new trial filed some three months after final judgment, the allegation is that the prosecutor volunteered information to a local radio station concerning Mrs. Milanovich's alleged criminal record. The prosecutor happened to be the attorney for the radio station. When there for consultation on other matters, he allegedly made the statements about the appellant at the solicitation of the news broadcaster, with knowledge that they would be repeated over the air. His assertions that Mrs. Milanovich was a woman with a long record of arrests on charges of prostitution and liquor sales were broadcast at least three times during the week preceding the second trial. The motion for a new trial based upon this ground has, by consent of the parties, been made part of the main appeal.

The Government makes no attempt to defend such conduct of a prosecutor. Indeed, it concedes that it constitutes a violation of the duties and responsibilities of his office.[3] It argues, however, that such malfeasance alone, in the absence of some actual prejudice to the accused, would not be sufficient to nullify the conviction. On the other hand, the defendant contends that a showing of prejudice is not essential and that a new trial should have been ordered.

The broadcasts in question were known to the defendant at the time of trial, although she did not know until later the source of the statements. The broadcasts were brought to the court's attention at the opening of the trial, and the court instituted an immediate and careful inquiry. On voir dire, all prospective jurors were questioned to determine whether they had heard the broadcasts or read anything in the newspapers concerning the defendant. Of the twelve

finally selected, none had heard the broadcasts and only one had read anything in the paper about the defendant and he was unable to recall what it was he had read. Pointing up the extreme care of the court in assuring a fair trial by readily excusing for cause all prospective jurors who had been exposed to the broadcasts, it is noteworthy that the defendant exercised only two of her ten permissible peremptory challenges. Furthermore, the judge voluntarily offered to grant a continuance or change of venue if the defendant so desired. She chose to proceed to trial.

 Whenever it appears that shortly before a trial public news media in the community have published incompetent and prejudicial information about the case or the defendant, a duty devolves upon the trial court to make certain that the necessary conditions of a fair trial have not been impaired. Prospective jurors should be closely examined to determine whether they have been exposed to the improper information, and, if so, whether they can lay aside what has been heard in reaching a verdict. See Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). If the prosecutor, an officer of the court, is implicated in the dissemination of such information, the occurrence should be scrutinized with special concern. See Holmes v. United States, 284 F.2d 716, 718 (4th Cir., 1960); Massicot v. United States, 254 F.2d 58, 62–63 (5th Cir., 1958); cf. Janko v. United States, 281 F.2d 156, 169–170 (8th Cir., 1960). If the publication is shown to have reached the prospective jurors, they should be excused if there is any doubt about their partiality. When discovery of such events is made after the jury is sworn, then a new trial is mandatory unless the Government can affirmatively show that the jurors could not have been affected by it. See Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); Shepherd v. Florida, 341

---

**3.** Neither in the hearing in the District Court on the motion for a new trial, nor here, did the Government take the trouble to deny that the statements were made.

U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740 (1951) (concurring opinion). In the latter instance the burden is not upon the defendant to establish that he was prejudiced thereby.

In the present case, the publication was of such a character as to call for investigation, and the presiding judge, recognizing his duty, made a conscientious inquiry. What emerged, however, is not a case leaving one in doubt as to whether jurors were affected by information brought to their attention. Here the record unequivocally establishes that the offensive broadcasts did not reach the ears of anyone who was permitted to serve on the jury and that by no possibility could the broadcasts have had any influence. Indeed, the defendant concedes as much. Her insistence is not that prejudicial matter affected the jurors to deprive her of their impartial judgment. Rather, the thrust of her argument is that the misconduct of the prosecutor should be punished by granting her a new trial, even though it could have had no impact upon the trial.[4]

A prosecutor who supplies a radio station with adverse information to be disseminated about a defendant on the eve of trial commits a gross violation of professional propriety meriting severe condemnation. But while we are deeply concerned about misconduct of this type, we are not prepared to upset the conviction, for the defendant has had her day in court before a jury whose fairness she herself does not impugn. The judgment of conviction and the order overruling the motion for a new trial are

Affirmed.

## ADDENDUM

In the absence of any evidence in the District Court from the special prosecutor, who was ill when the motion for a new trial was heard, the trial court assumed that the version given in the deposition of the newscaster was true, but held, nevertheless, that the jury was not influenced since they had not heard or learned of the broadcast. In fairness to the prosecutor we should add that since the publication of our opinion he has stated to us that he gave no information to the broadcasting station that it did not already possess.

---

4. Henslee v. United States, 246 F.2d 190, 193 (5th Cir. 1957), is cited in support of the argument, but that case is distinguishable. There, unlike the present case, some doubt existed whether the Government had affirmatively demonstrated that the jurors had not seen the improper publication.