**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jessie Kenneth McKINNEY, Defendant-**
**Appellant.**

**No. 27634.**

United States Court of Appeals,
Fifth Circuit.

July 1, 1970.

Cread L. Ray, Jr. (court-appointed), Ben Z. Grant, Marshall, Tex., for defendant-appellant.

Richard Brooks Hardee, U. S. Atty., Tyler, Tex., Carl R. Roth, Asst. U. S. Atty., Beaumont, Tex., Kirby W. Patterson, Atty., Criminal Section, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before RIVES, GOLDBERG and GODBOLD, Circuit Judges.

GOLDBERG, Circuit Judge.

In this criminal case the appellant entreats us to invade the cloister of the jury room to determine whether the verdict of guilty in the court below may have been influenced by prejudicial newspaper publicity. With equal fervor the government implores us not to enter the cloister, invoking the aged and hallowed principle of the sanctity of jury deliberations. Eschewing blind obedience to this salutary principle, we reject the government's imploration. Firm in our belief that this is one of those rare occasions which demand a ventilation of the jury's precincts in the interest of justice, we remand for a determination of the facts regarding the jury's deliberations and for the application of such therapy as the facts may require.

### I.

On February 3, 1966, Jessie Kenneth McKinney was indicted for entering a bank with intent to commit larceny in violation of 18 U.S.C.A. § 2113(a). While awaiting trial on this charge McKinney escaped from the Harrison County Jail in Marshall, Texas, on May 27, 1966. His escape apparently received extensive coverage in newspapers in the area. After being apprehended and returned to the custody of law enforcement officials, McKinney was brought to trial in the United States District Court for the Eastern District of Texas—the court sitting in Marshall, Texas—on July 5, 1966. On that date McKinney entered a plea of not guilty, the jury was selected, the case was tried, the jury found McKinney guilty, and the court sentenced him to a term of twenty years.

After conviction and sentencing, McKinney's court-appointed counsel apparently had a discussion with a juror who told him that members of the jury had recalled newspaper stories concerning McKinney's May 27 jailbreak and had discussed among themselves his escape and subsequent apprehension. Consequently, in his motion for new trial, filed on July 8, 1966, McKinney's counsel included the following point:

"The defendant was substantially prejudiced and deprived of a fair trial by reason of the following circumstances:

"The members of the jury discussed in the jury room evidence not offered or admitted into evidence as to the guilt or innocence of the defendant, in that the jurors recognized the defendant as being one and the same person who escaped from the Harrison County jail and that such jail break was highly publicized in all of the news media in the Eastern District of Texas, said territory being within the jurisdiction of this Court from which said jurors were drawn, and the fact that the jurors discussed among themselves that the defendant had escaped from the Harrison County jail several weeks prior to trial, and discussed his apprehension and return to the Harrison County jail, no doubt influenced their decision as to the guilt or innocence of the defendant, and that such discussion of these facts outside of the record did irreparable harm to the defendant, which harm can only be cured by the granting of this motion for new trial. That such discussion of the above facts and the misconduct of the jurors has been confirmed to the defendant's court-appointed attorney by the juror, Thornton F. Everett, who resides at 102 Acorn Drive, Marshall, Texas."

There is no indication in the record that McKinney's counsel offered any affidavit or other evidence in support of this contention. He apparently did not request a hearing, and the court did not hold a hearing. The motion for new trial was overruled on July 21, 1966. The court's order overruling the motion did not specifically mention the issue of jury misconduct; it merely recited that the motion was "in all things overruled."

McKinney now appeals to this court,[1] urging a reversal on the ground that "the jurors could not have reached an unbiased decision as to the guilt or innocence of the appellant in this case since they discussed his jail breaking record which was not in evidence before them." The government urges us to affirm the conviction on the ground that the trial court correctly disposed of McKinney's allegation of jury misconduct. We do not adopt either party's position. Instead, for the reasons hereinafter given, we remand to the district court for the holding of an evidentiary hearing concerning the alleged jury misconduct.

## II.

█ The problem of prejudicial newspaper publicity can arise in many different ways, and these situations are not easily susceptible of categorization. It is not surprising, therefore, that in the present case we find it somewhat difficult to draw exact parallels with the factual situations presented by other cases. We are guided, however, by general principles which are deeply ingrained in our jurisprudence. We begin with the very concept of the jury as the determiner of guilty or innocence in criminal trials. At the heart of this concept is the notion that the jury, drawn from the populace to determine whether one accused of crime will be punished or will go free, should make its decision solely on the basis of the evidence offered in open court with all the judicial safeguards there afforded. As Mr. Justice Holmes wrote for the Supreme Court more than sixty years ago, "[t]he theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." Patterson v. Colorado, 1907, 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879, 881.[2]

All must recognize, of course, that a complete sanitizing of the jury room is impossible. We cannot expunge from jury deliberations the subjective opinions of jurors, their attitudinal exposi-

1. The long delay between McKinney's trial in 1966 and his present appeal is explained by the following circumstances: A few days after his conviction, McKinney again escaped from custody in Texas, but he was quickly apprehended in Tennessee and was eventually delivered to the United States Penitentiary at Leavenworth, Kansas. After McKinney's escape his counsel made no effort to appeal his conviction. On September 12, 1967, McKinney filed in the district court a motion to vacate his sentence pursuant to 28 U.S.C.A. § 2255. One of his grounds was that he had been denied the right to appeal. The district court denied the motion without an evidentiary hearing. On appeal this court reversed, (1) holding that McKinney had not lost his right to appeal by virtue of his escape and (2) remanding for a hearing on the question whether McKinney had abandoned his appeal. McKinney v. United States, 5 Cir. 1968, 403 F.2d 57. On remand the district court held an evidentiary hearing and apparently concluded that McKinney had not abandoned his appeal. Consequently, on March 24, 1969, the court entered an order allowing him to take an out-of-time appeal. Thus McKinney's appeal from his conviction is now before us, almost four years after the date of that conviction.

2. A more modern reaffirmation of this basic principle is found in Briggs v. United States, 6 Cir. 1955, 221 F.2d 636, 638, in which the Sixth Circuit stated:

"One of the fundamental rules of criminal law is that a defendant in a criminal case is entitled to be tried by jurors who 'should determine the facts submitted to them wholly on the evidence offered in open court, unbiased and uninfluenced by anything they may have seen or heard outside of the actual trial of the case.' Stone v. United States, 6 Cir., 113 F.2d 70, 77; Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917; Wheaton v. United States, 8 Cir., 133 F.2d 522, 527; Little v. United States, 10 Cir., 73 F.2d 861, 864."

Very recently this court had occasion to state that in criminal cases "[i]t is a fundamental principle that the government has the burden of establishing guilt solely on the basis of evidence produced in the courtroom and under circumstances assuring the accused all the safeguards of a fair trial." Farese v. United States, 5 Cir. 1970, 428 F.2d 178, 179.

tions, or their philosophies. These involve the very human elements that constitute one of the strengths of our jury system, and we cannot and should not excommunicate them from jury deliberations. Nevertheless, while the jury may leaven its deliberations with its wisdom and experience, in doing so it must not bring extra *facts* into the jury room. In every criminal case we must endeavor to see that jurors do not "testify" in the confines of the jury room concerning specific facts about the specific defendant then on trial. Our adversary system presupposes courtroom testimony only and must reject the transfusion of testimony adduced beyond the judicial aegis. To the greatest extent possible, all factual testimony must pass through the judicial sieve, where the fundamental guarantees of procedural law protect the rights of those accused of crime.

█ In keeping with these fundamental precepts, courts have been diligent in attempting to shield juries as much as is humanly possible from newspaper publicity prejudicial to the defendant, for it has been repeatedly recognized that newspaper publicity can so prejudice a jury's deliberations that a fair trial is unattainable. Such a situation can result from a total atmosphere of prejudice created by a constant barrage of press coverage, see Sheppard v. Maxwell, 1966, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; Irvin v. Dowd, 1961, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751,[3] or from specific newspaper articles which come to the attention of members of the jury, see Marshall v. United States, 1959, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250; Mattox v. United States, 1892, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917; United States v. Reid, 1851, 53 U.S. (12 How.) 361, 13 L.Ed.

1023; United States v. Kum Seng Seo, 3 Cir. 1962, 300 F.2d 623; Briggs v. United States, 6 Cir. 1955, 221 F.2d 636.[4]

The Supreme Court decision most relevant to the present case is Marshall v. United States, *supra*. In *Marshall* the defendant was convicted in a federal court of unlawfully dispensing tablets of a certain drug without a prescription from a licensed physician. His conviction was upheld by the Tenth Circuit,[5] but the Supreme Court reversed. Exercising its supervisory power over the federal courts, the Court granted a new trial because of prejudicial newspaper publicity. In a per curiam opinion the Court delineated the factual background of the issue of prejudicial publicity as follows:

"Petitioner [defendant] never took the stand; nor did he offer any evidence. A government agent testified that he was introduced to petitioner as a salesman who had difficulty staying awake on long automobile trips and that on two occasions he obtained these tablets from petitioner. Petitioner asked the trial judge to rule there was entrapment as a matter of law. The judge refused so to hold and submitted the issue of entrapment with appropriate instructions to the jury. Cf. Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed. 859. The Government asked to be allowed to prove that petitioner had previously practiced medicine without a license, as tending to refute the defense of entrapment. The trial judge refused this offer saying, 'It would be just like offering evidence that he picked pockets or was a petty thief or something of that sort which would have no bearing on the issue and would tend to raise a collateral issue

---

3. Although the present case does not involve a publicized carnival or spectacle as in *Sheppard* or press saturation of an entire community as in *Irvin*, the warnings and caveats of those cases are not without application here. See also Rideau v. Louisiana, 1963, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663.

4. As this court recently noted, "[c]ases in which adverse publicity has reached the jury, thereby necessitating a new trial, are legion." Farese v. United States, 5 Cir. 1970, 428 F.2d 178, 179 n. 2.

5. Marshall v. United States, 10 Cir. 1958, 258 F.2d 94 (2–1 decision, Judge Murrah dissenting).

and I think would be prejudicial to the defendant.'

"Yet during the trial two newspapers containing such information got before a substantial number of jurors.

\* \* \* \* \* \*

"The trial judge on learning that these news accounts had reached the jurors summoned them into his chamber one by one and inquired if they had seen the articles. Three had read the first of the two [newspaper articles] and one had read both. Three others had scanned the first article and one of those had also seen the second. Each of the seven told the trial judge that he would not be influenced by the news articles, that he could decide the case only on the evidence of record, and that he felt no prejudice against petitioner as a result of the articles. The trial judge, stating he felt there was no prejudice to petitioner, denied the motion for mistrial." 360 U.S. at 311–312, 79 S. Ct. at 1172–1173, 3 L.Ed.2d at 1251–1252.

The Supreme Court disagreed with the trial court's disposition of the case and granted a new trial, explaining its action in the following words:

"The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 2, 54 L.Ed. 1021, 1029, 20 Ann Cas. 1138. Generalizations beyond that statement are not profitable, because each case must turn on its special facts. We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. Cf. Michelson v. United States, 335 U.S. 469, 475, 69 S.Ct. 213, 93 L.Ed. 168, 173.

It may indeed be greater for it is then not tempered by protective procedures.

\* \* \*

"In the exercise of our supervisory power to formulate and apply proper standards for enforcement of the criminal law in the federal courts (Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257; McNabb v. United States, 318 U.S. 332, 63 S. Ct. 608, 87 L.Ed. 819), we think a new trial should be granted." 360 U.S. at 312–313, 79 S.Ct. at 1173, 3 L.Ed.2d at 1252.

The *Marshall* decision has served to accentuate the duty of the federal courts to guard against the effects of prejudicial newspaper publicity. As the Third Circuit has said, "whatever may have been the law prior to *Marshall,* since that decision it has been clear that a new trial should be granted in federal criminal cases when it is shown that members of the jury have read news accounts" which include inadmissible facts prejudicial to the defendant. United States v. Kum Seng Seo, 3 Cir. 1962, 300 F.2d 623, 625. See also Holmes v. United States, 4 Cir. 1960, 284 F.2d 716, 718.

A post-*Marshall* opinion of the Fourth Circuit gives us guidance concerning the proper attitude to be exhibited by a federal court when the problem of prejudicial newspaper publicity arises because of newspaper articles *published prior to trial:*

"Whenever it appears that shortly before a trial public news media in the community have published incompetent and prejudicial information about the case or the defendant, a duty devolves upon the trial court to make certain that the necessary conditions of a fair trial have not been impaired. Prospective jurors should be closely examined to determine whether they have been exposed to the improper information, and, if so, whether they can lay aside what has been heard in reaching a verdict. \* \* \* If the publication is shown to have reached the prospective jurors, they should be

excused if there is any doubt about their partiality. When discovery of such events is made after the jury is sworn, then a new trial is mandatory unless the Government can affirmatively show that the jurors could not have been affected by it. See Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); Shepherd v. Florida, 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740 (1951) (concurring opinion). In the latter instance the burden is not upon the defendant to establish that he was prejudiced thereby." United States v. Milanovich, 4 Cir. 1962, 303 F.2d 626, 629–630, cert. denied, 371 U.S. 876, 83 S.Ct. 145, 9 L.Ed.2d 115.

In the present case we are confronted with an allegation, first raised after trial, that information included in newspaper articles published prior to trial invaded the jury room during trial and that McKinney was prejudiced thereby. If McKinney's allegation is factually correct, evidence of his escape from the local jail—evidence that was not offered by the prosecution at trial—came to the attention of the jury as a result of the earlier newspaper accounts. The danger of prejudice from such information is readily apparent. Moreover, as the Supreme Court observed in Marshall, "[t]he prejudice to the defendant is almost certain to be as great when [prejudicial] evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. * * * It may indeed be greater for it is not then tempered by protective procedures." 360 U.S. at 312–313, 79 S.Ct. at 1173, 3 L. Ed.2d at 1252 (case citation omitted). If evidence of McKinney's flight from jail would have been admissible as tending to show guilt, it should have been received in the courtroom rather than in the jury room. In the courtroom McKinney would have been entitled to such judicial safeguards as the right to cross-examine, the opportunity to explain his flight, and perhaps a limiting instruction by the court. He clearly would have had these procedural rights

in the courtroom, but in the jury room he had none.

Faced with McKinney's allegation, what should the trial court have done? We think the answer is obvious. As in any case in which jury misconduct is alleged in the defendant's motion for new trial, the trial court should have conducted "a full investigation * * * in order to determine whether the incident occurred as alleged, and, if so, whether it can be said with assurance to have been harmless." 2 Wright, Federal Practice and Procedure § 554, at 491–92 (1969).

Two previous cases illustrate the care which this court has taken to see that allegations of jury misconduct receive full and adequate investigation. In Richardson v. United States, 5 Cir. 1966, 360 F.2d 366, the allegation was made in the defendant's motion for new trial that a witness had conversed privately with a member of the jury. We remanded for the holding of a hearing, and in doing so we stated:

"The allegation of fact in the third ground of the motion that the witness Treherne engaged in a private conversation with one of the jurors must stand as confessed since no hearing was conducted. Prejudice will be assumed in the form of a rebuttable presumption. Brown v. United States, 224 F.2d 845 (6th Cir. 1955); Johnson v. United States, 207 F.2d 314, 322 (5th Cir. 1953); Ryan v. United States, 89 U.S.App.D.C. 328, 191 F.2d 779 (1951); cf. Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). In failing to conduct 'a thorough inquiry * * * to determine exactly what * * * occurred' before overruling the motion, the trial court abused its discretion. Johnson v. United States, supra, 207 F.2d at 322.

"We therefore affirm the judgment of conviction, vacate the order of the district court denying the motion for a new trial, and remand the case to the district court with directions to hold a hearing to determine whether

the incident complained of in the third ground of appellant's motion occurred as alleged and, if so, was harmful to him, and if after hearing it is found to have occurred and to have been harmful, to grant a new trial. Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954)." 360 F.2d at 369.[6]

In Morgan v. United States, 5 Cir. 1967, 380 F.2d 915, the defendant's motion for new trial alleged an improper conversation between a juror and a nonjuror. The trial judge, after examining each of the members of the jury separately, denied the motion for new trial and filed findings of fact explaining the denial. We concluded that the findings of fact were not specific enough to allow us to determine with precision his reasons for denial of the motion, and we therefore vacated the denial and remanded for additional findings of fact.[7]

 Implicit in these cases is the assumption that when jury misconduct is alleged in the defendant's motion for new trial, the trial judge has a duty to take the following actions: he must conduct a full investigation to ascertain whether the alleged jury misconduct actually occurred; if it occurred, he must determine whether or not it was prejudicial; unless he concludes that it was clearly not prejudicial, he must grant the motion for new trial; if he concludes that it did not occur or that it was clearly not prejudicial, he must spell out his findings with adequate specificity for meaningful appellate review.

 In the present case, we think it is clear that an evidentiary hearing should have been held to investigate the allegation in McKinney's motion for new trial. Since the trial court did not hold such a hearing, but merely entered an order overruling the motion, a remand to the trial court would appear to be the proper disposition of this case. See Richardson v. United States, *supra,* 360 F.2d at 369. The government, however, advances several arguments in an attempt to uphold the trial court's summary treatment of McKinney's motion for new trial, and to those arguments we now turn.

### III.

The government's several arguments are subsumed into two principal contentions: (1) that the issue of prejudicial newspaper publicity "cannot properly be raised for the first time by a motion for new trial after the verdict," and (2) that even if McKinney can raise this issue, the trial court did not abuse its discretion in denying the motion for new trial. For the reasons which follow, we reject both contentions.

### A.

The government's initial contention centers around a crucial inquiry—whether the actions of McKinney's counsel during the voir dire examination of the jury panel constituted a waiver of McKinney's right to raise, after the verdict, the issue of prejudicial publicity. In its original brief to this court, the government advanced its waiver argument in these words:

> "It is the position of the Appellee that the alleged knowledge of the jurors as to the Appellant's prior criminal activities cannot properly be raised for the first time by a motion for new trial after the verdict. Counsel for the Appellant had ample opportunity to inquire about and discover during the voir dire examination of the jury panel whether any jurors had knowledge of the Appellant's prior escapes or of other criminal conduct on his part. He would have been further entitled to inquire as to whether such knowledge might have prejudiced or influenced the decision of

---

6. For the ultimate outcome of the *Richardson* case see Richardson v. United States, 5 Cir. 1967, 376 F.2d 844.

7. For the ultimate outcome of the *Morgan* case see Morgan v. United States, 5 Cir. 1968, 399 F.2d 93, cert. denied, 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 568.

any prospective jurors, and if any bias or prejudice had been disclosed, such juror could have been excused for cause. Furthermore, if, upon examination of the jury panel, it had been discovered that there was a widespread knowledge of the Appellant's prior escapes and other criminal conduct, the Appellant could have avoided the prejudicial effect by an appropriate motion for change of venue or for continuance.

\* \* \* \* \* \*

"It was the duty of the Appellant's counsel to ascertain by proper examination at the time the jury was empaneled the existence of any prejudice or bias on the part of the prospective jurors, and having failed to do so, he cannot now raise such objections which might have been discovered and seasonably presented to the trial court. The orderly administration of justice demands that defendants be required to avail themselves of the established procedures designed to afford protection from the type of prejudice alleged in this case, and thereby giving the trial court the opportunity to consider the issues and take the remedial measures necessary. The Appellant in this case declined to utilize his opportunity to investigate at the proper time the possibility of the knowledge of the jurors as to the Appellant's prior criminal conduct, and did not move to continue the trial or to obtain a change of venue, and, therefore, should not now be entitled to question the verdict of the jury on this basis."

Once the government had injected this argument into this appeal, it became the most hotly disputed issue in the case, and a flurry of activity by both parties ensued. McKinney filed a supplemental brief, accompanied by a supplement to the record, claiming that he had not been given an adequate opportunity to question the prospective jurors about prejudicial newspaper publicity.

The government then filed a response to McKinney's supplemental brief, and in oral argument the parties vigorously disputed the adequacy of the voir dire examination.

In deciding this issue, we note at the outset that when possibly prejudicial newspaper articles have been published before the trial, as they were in this case, the defendant's counsel clearly has a duty to see that the issue of the publicity is explored during the voir dire examination. "The ultimate question is whether it is possible to select a fair and impartial jury, and the proper occasion for such determination is upon the *voir dire* examination." Blumenfield v. United States, 8 Cir. 1960, 284 F.2d 46, 51, cert. denied, 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692. It would be an aberration in the administration of criminal justice if counsel for a defendant could simply remain silent about the problem of pre-trial publicity during the voir dire examination and then assert the existence of the publicity for the first time after an adverse verdict.

In the present case, however, the record indicates that McKinney's counsel did attempt to explore the issue of prejudicial publicity in the course of the voir dire examination. Pursuant to the custom of the trial court, the examination of the jury panel was conducted by the attorneys rather than by the court. The members of the panel were examined en masse. At the outset the court remarked that "[w]e would appreciate the attorneys' cooperation in expediting the voir dire examination as much as possible." Thereupon the government attorney, Mr. Trickey, questioned the members of the jury panel. At the conclusion of his questions, McKinney's attorney, Mr. Ray, began to question the prospective jurors. At one point during his questioning the court commented: "Mr. Ray, if you can expedite it a little bit we will appreciate it." Shortly thereafter Mr. Ray turned to the issue of pre-trial publicity, and

the record shows that the following transpired with respect to that issue:

"MR. RAY: Have any of you read newspaper articles concerning the crime with which Mr. McKinney is charged? Mr. Moore, Mrs. Johnson. Are there any others? Mr. Wier, Mr. McClung, Mr. Castloo, Mr. Charles Davis. Any others?

Those of you who have answered that you have read something about this case, let me ask you this question: After you have ready [sic] and I assume that you have read newspaper articles, would that be correct? (a 'yes' indicated). Let me ask an additional question: Have any of you seen any television programs which may have broadcast something concerning this case that you recall?

I will ask you the next question: After you read the newspaper article did you come to any conclusion about the case? If you did, would you please raise your hand, if you came to any conclusion about the guilt or innocence of the man who sits here? Will you please raise your hand?

Do any of you feel like the information which you read in the newspaper would tend to show that Mr. McKinney is guilty or innocent of the crime with which he is charged?

Do any of you feel that way about it at this point because of the newspaper article which you read?

Would Mr. McKinney have to put on any evidence to show you that he is not guilty, in order for you to find him not guilty at this point? If so, please raise your hand.

Do you feel like—and the reason I am asking you this question Mr. Moore is not to embarrass you but because you have had considerable experience in these matters, do you feel like Mr. McKinney would have to show you by some evidence—

THE COURT: You have already asked that question of the panel and no one has expressed an opinion. It is not necessary to ask specific questions.

MR. RAY: I take it by Mr. Moore's silence—

THE COURT: His silence and the silence of all the other members of the jury panel, that they would not be prejudiced against the defendant and that they would not consider him guilty from anything they may have read or have heard or seen."

■ On appeal McKinney argues that his counsel was attempting to examine the members of the jury panel *individually* concerning pre-trial publicity, and that he was "cut off" by the trial court. We think a fair reading of the record supports McKinney's interpretation of the proceedings.[8] It is obvious that his counsel wanted explanation through individual comments rather than *en bloc* me-too-ism. Such individualization was blocked, however, when the court indicated clearly that it would not allow further exploration of the matter of prejudicial publicity by way of questions directed to individual members of the jury panel.[9]

8. Even the government does not really dispute McKinney's interpretation of the record. Although the government contends that the action of the trial court was completely proper, the government characterizes the court's action as a "denial of a request to examine each member of the panel individually."

9. Numerous cases can be cited in which trial courts have exercised more care in examining the individual members of the jury panel than did the trial court in the present case. However, we do not pause here to examine cases of this genre, for the issue before us is not whether the voir dire examination was adequate, but whether McKinney's counsel, by his conduct during the voir dire, *waived* McKinney's right to make objection after the verdict to the infusion of newspaper publicity into the jury room.

Nevertheless, we do offer the observation that collectivization of responses is not always a proper safeguard, and the weakness inherent in such a procedure should not be glossed over. As the First Circuit has said, a question "posed to

■ In view of the record of the voir dire examination, we cannot hold that the conduct of McKinney's counsel during the voir dire constituted a waiver of McKinney's right to raise the issue of prejudicial publicity. In reaching this result, we do not view this as a generic case, nor do we attempt to lay down rules applicable to all times and all situations. We merely conclude that in this case, on this record, we cannot accept the government's position that McKinney is barred from raising the issue.

### B.

The government contends, however, that even if McKinney can raise the issue of jury misconduct growing out of prejudicial publicity, the trial court did not abuse its discretion in denying McKinney's motion for new trial. In support of this major contention the government advances three alternative arguments.

■ First, the government contends that the trial court's summary denial of the motion for new trial is "supported by the historic policy of the federal courts to protect the sanctity of the jury deliberations." Although the precise contours of this argument are not clear,

apparently the government means to say that the holding of a hearing in this case would require the jurors to "impeach their verdict" because the trial court would be required to delve into the mental process by which each juror reached his decision on the verdict. This is not the case at all. The court need not inquire into the mental process of any juror; it need only determine the existence or non-existence of a demonstrable, objective fact, i. e., discussion by the jury of pre-trial publicity. This is an overt act, not a thought hidden in the mental process of any single juror.[10] Analogous situations have elicited post-verdict inquiry in previous cases. For example, in United States v. Kum Seng Seo, 3 Cir. 1962, 300 F.2d 623, the trial court permitted jurors to testify that a member of the jury had brought a newspaper article into the jury room and that the article had been passed around the room and discussed by some of the jurors. In reviewing the case the Third Circuit accepted the testimony of the jurors as the factual basis for deciding the appeal. Similarly, in the present case we think it is proper to ascertain the factual validity of McKinney's allegation by asking the

---

the panel en bloc, with an absence of response, achieves little or nothing by way of identifying, weighing, or removing any prejudice from prior publicity." Patriarca v. United States, 1 Cir. 1968, 402 F.2d 314, 318, cert. denied, 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567. The First Circuit further stated:

"In cases where there is, in the opinion of the court, a significant possibility that jurors have been exposed to potentially prejudicial material, and on request of counsel, we think that the court should proceed to examine each prospective juror apart from other jurors and prospective jurors, with a view to eliciting the kind and degree of his exposure to the case or the parties, the effect of such exposure on his present state of mind, and the extent to which such state of mind is immutable or subject to change from evidence." Id.

10. Compelling policy reasons for allowing jurors to be questioned concerning overt

acts were recognized as long ago as 1874, when the Supreme Court of Kansas stated:

"Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because being personal it is not accessible to other testimony; it gives to the secret thought of one the power to disturb the expressed conclusions of twelve; its tendency is to induce bad faith on the part of a minority, to induce an apparent acquiescence with the purpose of subsequent dissent; to induce tampering with individual jurors subsequent to the verdict. But as to overt acts, they are accessible to the knowledge of all the jurors; if one affirms misconduct, the remaining eleven can deny; one cannot disturb the action of the twelve; it is useless to tamper with one, for the eleven may be heard." Perry v. Bailey, 1874, 12 Kan. 539, 545.

members of the jury whether the alleged discussion actually took place.[11]

■ The government next attempts to defend the trial court's failure to hold a hearing on the ground that McKinney did not make an adequate factual showing at trial. His motion for new trial was unaccompanied by any supporting affidavits or other evidence, and it is the government's view that "the motion on its face was inadequate to even raise a substantial question as to the issue of misconduct or the possibility of prejudice arising therefrom." We cannot agree. McKinney's allegation mentioned jury discussion of a specific incident as allegedly related to McKinney's counsel by a specific juror, whose name and address were given. The factual import of the allegation is clear, and the inclusion of the allegation in the motion for new trial, without supporting affidavits, was not procedurally inappropriate.[12]

The government's final argument is based on speculation concerning the trial court's reason for denying McKinney's motion for new trial. The government suggests that the trial court must have predicated its denial of the motion on a finding that, even if the jury did discuss McKinney's jailbreak, McKinney was not *prejudiced* by such discussion. We decline to indulge in this speculation, however, because the record before us is barren of any indication that the court did in fact go through the reasoning which the government has constructed on appeal. As far as the record reveals, the trial court never reached the issue of prejudice.

Since the trial court never conducted an investigation to ascertain whether McKinney's allegation of jury misconduct was factually correct and, if it was, whether McKinney was prejudiced,

we have no choice but to hold that the court abused its discretion in denying McKinney's motion for new trial. See Richardson v. United States, *supra*, 360 F.2d at 369. We therefore remand with directions to the trial court to hold an evidentiary hearing on the issue of jury misconduct.

## IV.

■ One additional point merits discussion. In remanding for the holding of an evidentiary hearing, we obviously anticipate that members of the jury will be questioned. It should be noted, however, that the questioning of the jurors should be limited to the *factual* issue, i. e., whether a discussion of McKinney's escape from the Harrison County jail did in fact take place during the jury's deliberations. With regard to the second question to be answered—whether the discussion, if it did take place, was *prejudicial* to McKinney—the opinions of the jurors would be nothing more than each juror's evaluation of his own mental processes. Thus it would not be proper to ask any juror whether he thinks his vote in support of the guilty verdict was affected by the discussion of McKinney's escape from jail. On the contrary, the trial court itself must decide the question of prejudice on the basis of an independent evaluation of all the circumstances of the case. As the Second Circuit stated in a somewhat similar situation, the question of whether any of the jurors "relied on the forbidden knowledge" should be determined "on the basis of the nature of the matter and its probable effect on a hypothetical jury." United States v. Crosby, 2 Cir. 1961, 294 F.2d 928, 950. See generally *id*. at 949–950; *cf*. Braswell v. United States, 5 Cir. 1952, 200 F.2d 597, 602. Therefore, if the trial court, after

---

11. *But see* Part IV of this opinion.

12. See e. g., Richardson v. United States, 5 Cir. 1966, 360 F.2d 366, 369 ("The allegation of fact *in the third ground of the motion* [for new trial] * * * must stand as confessed since no hearing was conducted.") (emphasis added); 2

Wright, Federal Practice and Procedure § 554, at 491–492 (1969) ("Because of the seriousness of possible misconduct affecting the jury, the court must make a full investigation when such a ground is alleged *on a motion for a new trial* * * *.") (emphasis added).

hearing the testimony of jurors, determines that a discussion of McKinney's jailbreak did take place during the jury's deliberations, it must then make its own determination as to whether McKinney was prejudiced thereby.

In the light of the foregoing, we remand to the district court with the following directions: (1) The court shall hold an evidentiary hearing to determine whether the discussion alleged by McKinney took place during the jury's deliberations. (2) If the court finds that it did take place, the court shall then determine whether the discussion was prejudicial to McKinney. With regard to this issue, unless the court finds that McKinney was clearly not prejudiced, the court shall grant the motion for new trial. (3) If the court determines (a) that the alleged discussion did not take place or (b) that it was clearly not prejudicial, the court shall enter fact findings adequate to explain fully its denial of the motion for new trial.

It is so ordered.

GODBOLD, Circuit Judge (dissenting):

I am not willing to put my sanction on bringing into court the jurors in this case to be interrogated about events said to have occurred in their deliberations more than four years ago.

No judge would quarrel with the policy that the conclusions of the jury should be reached upon only the evidence unaffected by extrinsic facts. The problem is the application of the principle in this case and the broad sweep of the majority's language which reaches far beyond the factual context presented to us for decision.

Counsel filed an unsworn motion for new trial, one ground of which was his statement that an identified juror had told him the jury discussed that the defendant broke jail before trial and was caught and returned. No affidavit was filed. No hearing was asked. In this court an affidavit is attached to appellant's brief in which counsel restates what he said in the motion for new trial three years earlier.

The fact alone that a motion says that the jury discussed something not in evidence does not compel the district judge to convene an inquiry and ask if the alleged statement of fact was made in the jury room and, if it was, then interrogate the jurors about possible prejudice. The judicial mind of a district judge is not required to be that undiscriminating in other aspects of the trial process and need not be in this aspect. The district judge's discretion to deny the motion or to conduct an inquiry should be narrow in range. But this is not to say that he has no discretion and is bound to respond in Pavlovian fashion. Nor, at the appellate level, are we stripped of the power to conclude on this record at this time that the conviction should be affirmed.

There are applicable considerations that give the judge guidance, familiar to him and employed in other contexts without question. At the threshold, how does the allegation come to the judge's attention? Is it courthouse rumor, a report from a court official, an affidavit of a juror, a sworn motion? Is it first hand or a recital of hearsay? The unsworn motion in this case, with the allegation as one ground, not dignified by request for a hearing or offer of proof, is a slim predicate for mandating an investigation. Richardson v. United States, 360 F.2d 366, 369 (5th Cir. 1969) speaks of a rebuttable presumption of prejudice, but is not authority that a presumption arises from the fact of filing any motion without regard to its form or contents. In *Richardson* the motion was verified. It alleged a private conversation in the courthouse corridor between a juror and a witness. The content of the conversation is not described in the opinion, so presumably was not stated in the motion either. Thus an investigation was required.

McKinney might contend that the failure of his counsel to verify the motion or submit an affidavit from him-

self or the juror or call for a hearing presents a question of effectiveness of counsel. If ever raised that is a matter to be adjudicated in a § 2255 proceeding and should not be *sub silentio* a basis in this direct appeal for shifting the onus to the trial judge.

Next, what is the content of the alleged fact—how harmful is it likely to have been in its impact on the jury? The trained judicial mind can recognize the difference between the extrinsic fact that the defendant is an Episcopalian, or a member of the country club, and the extrinsic fact that he committed rape last week. In this instance what the jurors are said to have discussed— that McKinney broke jail before trial— under Texas law would have been admissible to prove guilt. Cawley v. State, 310 S.W.2d 340 (Tex.Cr.App.1957). The Supreme Court of the United States is of the same view. Bird v. United States, 187 U.S. 118, 23 S.Ct. 42, 47 L. Ed. 100 (1902).

The extrinsic fact in this case is not harmful because shocking to the senses. Its content is not so unrelated as to lack probative force as to the offense charged and hence to invite punishment of the defendant because he is, for reasons other than the offense charged, one socially undesirable. It is not part of an invidious barrage of propaganda or a total atmosphere of prejudice. It is something the jurors as members of the community knew and brought to the courthouse within their own minds, not something destructive of the integrity of the trial process, as newspapers taken into the jury room, information furnished by a bailiff, or the private conversation with the witness. It is prejudicial, if at all, because it came to the jury's attention in an inappropriate way without opportunity by the defendant to seek limiting instructions as to its effect.

Comparison of this case with those on which the majority rely graphically demonstrates the extent to which my associates attenuate a salutary principle. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), involved a charge of dispensing drugs without a prescription. Two newspapers physically got before the jurors. They revealed that the defendant had practiced medicine without a license, a matter on which proof had been offered and which the court had held inadmissible. But that was only the beginning. The newspapers revealed the defendant had two previous felony convictions, that while serving a forgery conviction he testified to a state legislative committee studying new drug laws concerning the ease with which he wrote and passed prescriptions for dangerous drugs, and that his wife, who had been arrested with him on drug charges, already had been convicted and sentenced.

In United States v. Milanovich, 303 F. 2d 626 (4th Cir. 1962), the post-trial information presented the judge was held to be "of such a character as to call for investigation." It was that the prosecutor had supplied to a radio station for which he was attorney assertions that the defendant (charged with larceny) had a long record of arrests for liquor sales and prostitution, and these assertions were broadcast at least three times during the week before the trial.

United States v. Kum Seng Seo, 300 F.2d 623 (3d Cir. 1962), was a heroin case. Immediately before the vote on guilt or innocence a juror circulated among the jurors a clipping of a newspaper story describing the trial in progress. It told that defendant was under $100,000 bail, which was neither in evidence nor admissible, and it stated the heroin was found in her room, an assertion not only not in evidence but contrary to the actual evidence.

In none of these cases did the court consider that content of the extrinsic facts was irrelevant. In each the court considered in careful detail what had been communicated to the jury.

There is not involved in this case any necessity for the court to take therapeutic action to protect the integrity of its

own processes, as in the instance of a bailiff who talks to jurors about the defendant, or the prosecutor in *Milanovich*.

Another factor is the weight of other evidence against the accused. Where other evidence of guilt is overwhelming we recognize the capacity of the trial judge to make judgments about the impact on the jury of extraneous matter improperly brought to its attention, as in the case of improper argument by the prosecutor or the volunteered statement of a witness. At the appellate level we have the power to affirm where the weight of evidence is sufficiently great. *Cf.* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1970). The approach of the majority denies to both the district court and this court employment of the *Chapman* standard of error "harmless beyond all reasonable doubt" until the district court has called the jurors in and questioned them. Three witnesses testified in this trial. Two were the girl friends and traveling companions of appellant and his codefendant Nix. They testified they accompanied McKinney and Nix to the bank and observed them enter and leave. The third witness was Nix, who had pleaded guilty before trial. He took the full blame and sought to exonerate McKinney.

A knee-jerk rule in this matter tends to inhibit discussion in the jury's deliberations. The easiest course for the juror will be to stay out of the dialogue lest someone say that he revealed an extrinsic fact which might cause him to be called back for post-trial inquiry. Perhaps worse, an automatic rule invites the convicted defendant in every criminal case to engage in a post-trial ransacking of the jurors to see if maybe somebody has said something that wasn't in evidence, with the sure knowledge that if anything turns up the jury must be questioned.

There is no necessity to remand this case to have the trial judge rule on prejudice, assuming the alleged event occurred, to be followed predictably by another appeal. We are capable of judging whether there is sufficient possibility of prejudice to require reversal.

Bearing on the exercise of discretion by this court, or by the District Judge, I note that the government brief tells us, and we can verify it if we choose, that after the trial Nix recanted, was indicted for perjury and pleaded guilty thereto.

This conviction should be affirmed and the case laid to rest. I respectfully dissent.