**UNITED STATES of America,
Appellee,**

v.

**John DOE, aka Angel L. Camacho, aka
Angel Lopez Gonzalez,
Defendant-Appellant.**

No. 74–1208.

United States Court of Appeals,
First Circuit.

Argued Feb. 3, 1975.

Decided April 17, 1975.

Morris M. Goldings, Boston, Mass., with whom Herbert D. Friedman, Boston, Mass., and Donald F. Frost, Miami, Fla., were on brief, for appellant.

Jorge Rios, Torres, Asst. U. S. Atty., with whom Julio Morales Sanchez, U. S. Atty., and Juan M. Perez Gimenez, Asst. U. S. Atty., San Juan, P. R., were on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

The principal argument raised in this criminal appeal is that the district court failed to make adequate inquiry and findings concerning alleged private communications between jurors and third persons.

There were four episodes. On the first day of a five day trial, after the jury had been impanelled but before evidence had been introduced, defense counsel noted that on his way to lunch he had observed a witness for the government "in the hall discussing I don't know what . . . within the realm of certain Jurors", and complained to the marshal, who "just let the Jurors go on." Counsel went on to report that on his return from lunch he had observed a juror selling lottery tickets to both a fellow juror and to a witness for the government.

As to the first incident, the juror in question had apparently been brought to the judge, admitted that he had talked about having lunch to a marshal whom he knew, but proved not to be a juror on the panel in this case.[1] The court's reaction to the second incident was to call to the courtroom the juror alleged to have sold lottery tickets to ascertain that he had in fact sold tickets to other jurors and to an unknown nonjuror, to call in the entire jury, to explain the situation as reported by defense counsel, remind the jurors of their responsibilities, and to replace the offending juror with an alternate. The court then, after admonishing the marshal to keep witnesses separated from jurors and the jurors to "hold your tongue", and to "watch your behavior", proceeded to interrogate some of the jurors, asking if they approved of its strictures. One juror, Rodriguez, responded ambivalently, expressing the thought

1. We say "apparently" because it is not crystal clear that this was a follow-up of the first episode described by defense counsel. It was, however, put forward as responsive by the prosecutor, without any further comment by defense counsel, and must stand as a satisfactory accounting. If, as it appears, this was an ex parte interview, without the presence of defense counsel, the latter knew of the incident and raised no objections at any time. As we said of a similar situation in United States v. Larkin, 417 F.2d 617, 619 (1969), this is "at best harmless error".

that the court might have been too harsh on the offending juror. Defendant's counsel noting that Rodriguez had both agreed and disagreed with the court and that the court had identified him, defendant's counsel, as the initiator of the inquiry, moved for a mistrial which was denied.

The third episode occurred on the second day of trial when the court referred to the conduct of a juror who, on the preceding day, had apparently registered disgust with a ruling by turning his back to the court. The juror turned out to be the hapless Rodriguez who again took issue with the court, denying that he had turned his back. The court then made it clear that it wished no "little children" or "petty notions" to interfere with a fair trial and asked each of the eleven remaining jurors to see if they both understood and agreed with its action. After a recess the court replaced Rodriguez with another alternate juror, saying court, prosecutor, and defense counsel concurred in the action. A short time later defendant's counsel moved a second time for a mistrial, arguing that Rodriguez' attitude may have influenced other jurors. The court again polled the jurors, asking them if they felt that, notwithstanding the incident, they could still be fair to both sides. All replied in the affirmative and the trial proceeded.

The final incident was brought to the court's attention just before closing argument on the fifth and final day of trial. Defendant's counsel reported that "yesterday I wasn't feeling too good but nevertheless at lunch time if I recall correctly I saw one of the Jurors speaking to another Juror" not on the panel, the juror having been challenged. Counsel again moved for a mistrial. The court then addressed the juror indicated by counsel, asked him if he had talked with a member of the panel who had been excused, received a denial, confirmed with counsel that the juror was the one referred to, asked the question for the second time, and again received a cate-

gorical denial. Counsel again moved for a mistrial, apparently since he had again been revealed as the source of the inquiry. The court responded, "What do you want me to do, keep it hidden? You asked me to inquire and I inquired. How else am I to handle it counsel?" Counsel replied that he had nothing to say. The court then instructed the jury that defense counsel was not to be criticized but was doing his duty and thanked counsel for raising the question. The summations began.

■ While we have not had recent occasion to discuss the subject of communications between jurors and third persons, except indirectly, see United States v. Larkin, 417 F.2d 617 (1969),[2] the legal principles are clear. Private communications between jurors and others are presumptively prejudicial unless their harmlessness is or becomes apparent. Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); Remmer v. United States, 350 U.S. 227, 76 S.Ct. 425, 100 L.Ed. 435 (1954). Cf. Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) (conversations not disclosed but close association of jurors with key prosecution witnesses); Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966) (statement of bailiff to juror concerning defendant). The circuits have spoken with consistency in requiring trial courts to examine scrupulously any suggestion of private communications. See cases cited in Tillman v. United States, 406 F.2d 930 (5th Cir. 1969), and 2 Wright, Federal Practice and Procedure, § 554.

■ We subscribe to the Fifth Circuit's formulation in United States v. McKinney, 429 F.2d 1019, 1026 (1970), of the trial court's duty:

"Implicit in these cases is the assumption that when jury misconduct is alleged in the defendant's motion for new trial, the trial judge has a duty to take the following actions: he must conduct a full investigation to as-

2. For a case of an earlier vintage, to the holding of which we would not necessarily sub-

scribe today, see Lewis v. United States, 295 F. 441 (1st Cir. 1924).

certain whether the alleged jury misconduct actually occurred; if it occurred, he must determine whether or not it was prejudicial; unless he concludes that it was clearly not prejudicial, he must grant the motion for new trial; if he concludes that it did not occur or that it was clearly not prejudicial, he must spell out his findings with adequate specificity for meaningful appellate review." [3] This formula, however, implicitly recognizes the "discretion [of the trial court] to determine the extent and type of investigation requisite to a ruling on the motion [for mistrial]." United States v. Tillman, *supra,* 406 F.2d at 938. *See also* United States v. Miller, 381 F.2d 529 (2d Cir. 1967).

■■ Applying these principles to the case at bar, we begin with the first episode—defense counsel's reported observation of a government witness "within the realm" of jurors. As we have noted, the record shows that an investigation by the court revealed that no juror on the panel was involved. The second episode—that of a juror selling lottery tickets—resulted in an investigation, followed by the replacement of the vending juror, a general admonition, and a polling of the jury to ascertain their agreement with the action taken. There is no question but that these were cathartic measures. The fact that the court identified defense counsel as the source of inquiry leaves something to be desired. Even though a jury may speculate that such inquiries might be likely to be stimulated by the defense, wherever possible a judge should attempt to conceal the origin of his concern. Nevertheless, we see no possibility of prejudice from this incident.

The third episode did not involve any alleged private communication with a juror but was rather the culmination of a growing irritation on the part of the court toward the stubborn Rodriguez. The defendant, in our view, could not be said to be prejudiced by this contre-

temps. If we were to speculate at all, we would say that at this juncture the jury might have been tempted to favor the defendant, as a means of demonstrating their independence.

■ The final episode could have been the most troublesome. The suggestion of a private conversation between a juror and a third party led to the court's inquiry of the juror and its identification of defense counsel as the source of the inquiry, the inquiry terminating with the denial of the juror. The subsequent explanation that counsel was not to be criticized for doing his duty was less satisfactory than an inquiry so conducted as not to require such explanation. Nevertheless, counsel has some duty in such a situation, both to call the court's attention promptly to any observed incident and to request an investigation to be carried further if such is feasible. The other party to the alleged conversation could have been identified and interrogated but no suggestion was made that this be done. These steps not having been taken, the incident not having been promptly brought to the court's attention and the presentation of evidence having been concluded, we think it was within the court's discretion to have denied the motion for mistrial.

This was not a perfect trial. There was occasional looseness in the conduct of some jurors, and, at least initially, inadequate segregation of the jury from persons not on the panel. In attempting to deal with these problems the court unnecessarily identified defense counsel as the source of the inquiries. Further, in acting to assure that defendant was not prejudiced by the jurors' ex parte contacts with nonjurors the court on several occasions admonished the jury in terms so severe as perhaps to set teeth on edge. Nevertheless, we are left with four incidents, the first of which must be deemed an inaccurate report, the second resulting in a replacement of the only juror who could have been tainted, the third not involving an unauthorized com-

---

**3.** We would add that our interest is more in substance than in form; curative action taken by the trial judge and reflected in the record if it provides an adequate basis for review will not be deemed insufficient because of the absence of formal findings.

munication, and a fourth occasion, belatedly reported and pursued to a determination of its non-occurrence, the adequacy of which was apparently satisfactory to all. In the light of the record before us, we cannot say that appellant was deprived of a fair trial and an impartial jury.

■ As for the remaining argument, that there was insufficient evidence of agreement on the part of defendant and another to accomplish an illegal purpose and knowledge by defendant that he was assisting in importing narcotics into the United States, we find it, in light of the record, devoid of merit.

Affirmed.