UNITED STATES of America,
Plaintiff-Appellee,

v.

John F. HENDRIX, Sr.,
Defendant-Appellant.

No. 76–1090.

United States Court of Appeals,
Ninth Circuit.

Jan. 17, 1977.

Rehearing and Rehearing En Banc
Denied March 28, 1977.

Herman A. Hauslein (argued), San Diego, Cal., for defendant-appellant.

Terry J. Knoepp, U. S. Atty., Peter K. Nunez, Asst. U. S. Atty., argued, San Diego, Cal., for plaintiff-appellee; Howard A. Allen, Asst. U. S. Atty., San Diego, Cal., on the brief.

Before DUNIWAY, CARTER and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

Hendrix appeals his conviction, after a jury trial, of one count of conspiracy to induce, smuggle and transport illegal aliens in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324 and six counts of transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(2). Hendrix raises 11 alleged errors, the most substantial of which is that he was denied his Sixth Amendment right to trial by an impartial jury because one of the jurors was biased. We affirm.

Hendrix' two-day trial occurred on November 18 and 19, 1975. Prospective jurors were examined and those chosen for the panel were sworn during the morning of November 18. When court recessed that afternoon, the wife and mother-in-law of Hendrix informed his counsel that during the morning, prior to the selection of the

jury. Mrs. Thompson, who was subsequently chosen as a juror, allegedly made statements revealing a bias against and a predisposition to convict criminal defendants. Before the trial recommenced on the 19th Hendrix' counsel informed the court of Mrs. Thompson's alleged bias and requested an investigation to determine if she should be removed from the jury panel. The district judge denied the request and directed counsel to file affidavits.

Within a week after the conclusion of the trial, affidavits of Mrs. Hendrix and her mother were filed. Both stated that Mrs. Thompson, on the morning of November 18, made the following comment:

Well, I really shouldn't be serving today because my husband is on vacation, and he asked me to get excused so I could join him, because I have served on jury duty several times. But we just had a case where a policewoman was tried for selling narcotics and the damn Judge let her go. And she was absolutely guilty. And I am here to see that they put some of these people away. These Judges are absolutely too lenient and they are letting too many people run around.

Approximately two weeks after the affidavits were filed, the district court heard arguments on Hendrix' motion for a new trial based on the allegations. The court determined that Mrs. Thompson's comments were made before she was questioned under oath as a prospective juror, during which time she stated "that she wasn't prejudiced." The court then reviewed the affidavits, found them to contain inadequate grounds for a new trial and denied Hendrix' motion.

These facts present two conceptually distinct issues. First, did the district judge commit reversible error in the procedure he followed in responding to the allegations of juror bias? Second, as a matter of law, did the court incorrectly conclude that any bias, if present was nonprejudicial?

I

It cannot be gainsaid that a fair system for the administration of justice must include the guarantee of "an impartial jury" for the criminally accused. U.S. Const. amend. VI. *See generally, Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Stone v. United States,* 113 F.2d 70, 77 (6th Cir. 1940). If only one juror is unduly biased or prejudiced or improperly influenced, the criminal defendant is denied his Sixth Amendment right to an impartial panel. *E.g., Tillman v. United States,* 406 F.2d 930, 937 (5th Cir.), *vacated on other grounds,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969); *Stone v. United States, supra,* 113 F.2d at 77. The trial judge has both a great responsibility and a wide discretion to give meaning to this guarantee. *E.g., Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 547–50, 96 S.Ct. 2791, 2797–98, 49 L.Ed.2d 683 (1976); *Sheppard v. Maxwell, supra,* 384 U.S. at 358–63, 86 S.Ct. 1507; *United States v. Doe,* 513 F.2d 709 (1st Cir. 1975); *Tillman v. United States, supra,* 406 F.2d at 937; *United States v. Miller,* 381 F.2d 529, 539 (2d Cir. 1967), *cert. denied,* 392 U.S. 929, 88 S.Ct. 2273, 20 L.Ed.2d 1387 (1968); *United States v. Flynn,* 216 F.2d 354, 372 (2d Cir. 1954), *cert. denied,* 348 U.S. 909, 75 S.Ct. 295, 99 L.Ed. 713 (1955).

An important part of the district judge's broad discretion centers on his response to allegations of juror bias or misconduct. For example, it is within the trial court's discretion to determine whether and when to hold an evidentiary hearing on such allegations. If the judge orders an investigative hearing, it is within his discretion to determine its extent and nature. *See United States v. Doe, supra,* 513 F.2d at 712; *Tillman v. United States, supra,* 406 F.2d at 938.[1] As a matter of common sense, a trial judge in making these decisions will necessarily be directed by the content of the

1. Dictum by the Supreme Court in *Wade v. Hunter,* could be read as permitting a trial judge no discretion in determining how to deal with allegations of juror misconduct or bias:

And there have been instances where a trial judge has discovered facts during a trial which indicated that one or more members of a jury *might* be biased against the Govern-

allegations, including the seriousness of the alleged misconduct or bias, and the credibility of the source. *See United States v. McKinney,* 429 F.2d 1019, 1031 (5th Cir. 1970) (Godbold, J., dissenting), *cert. denied,* 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971).[2]

▮ If an evidentiary hearing is held, it has two purposes. The first is to deter-

ment or the defendant. It is settled that *the duty of the judge* in this event is to discharge the jury and direct a retrial. *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949) (emphasis added; footnote omitted). Nevertheless, after carefully examining this case and the development of the law since it was decided, we are convinced that the quoted language was not intended as a limitation on a trial court's broad discretion to deal with allegations of juror misconduct.

First, *Wade v. Hunter* was concerned with the scope and effect of the Double Jeopardy Clause, particularly in the context of a military court-martial. The quoted language comes in a paragraph listing the many ways in which a trial might end prior to a verdict without constituting former jeopardy. The Court itself stated the purpose for making that list:

> What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.

*Id.* at 689, 69 S.Ct. at 837.

The Court then stated that whether "justice requires that a particular trial be discontinued is a question that should be decided by persons conversant with factors relevant to the determination." *Id.* This requires reliance on the trial court's "sound discretion" and "conscientious exercise of [its] discretion." *Id.* at 690, 69 S.Ct. 834, *quoting United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). The case read in its entirety, therefore, indicates no intention to limit a trial court's discretion regarding treatment of allegations of juror bias. On the contrary, that discretion is reemphasized.

Second, in the years since *Wade v. Hunter* was decided, the discretion of the trial judge to deal with this kind of problem has been repeatedly acknowledged. *E. g., United States v. Shahane,* 517 F.2d 1173 (8th Cir.), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975); *United States v. Doe,* 513 F.2d 709 (1st Cir. 1975); *Tillman v. United States, supra,* 406 F.2d at 937; *United States v. Miller, supra,* 381 F.2d at 539; *United States v. Flynn, supra,* 216 F.2d at 372; *cf. Richardson v. United States,* 360 F.2d 366 (5th Cir. 1966).

2. Although it had previously acknowledged the trial court's discretion in dealing with allegations of juror misconduct, *see Tillman v. United States, supra,* 406 F.2d at 937–38, the Fifth Circuit in *United States v. McKinney, supra,* 429 F.2d at 1025–26, imposed rather rigid rules on the trial court:

> [W]hen jury misconduct is *alleged* in the defendant's motion for new trial, the trial judge has a duty to take the following actions: he *must* conduct a full investigation to ascertain whether the alleged jury misconduct actually occurred; if it occurred, he *must* determine whether or not it was prejudicial; unless he concludes that it was clearly not prejudicial, he *must* grant the motion for new trial; if he concludes that it did not occur or that it was clearly not prejudicial, he *must* spell out his findings with adequate specificity for meaningful appellate review.

*Id.* at 1026 (emphasis added).

Judge Godbold dissented, arguing that the trial judge should be given some leeway in responding to allegations of juror misconduct. *Id.* at 1031–33. He objected to binding the trial judge "to respond in Pavlovian fashion." *Id.* at 1031. In particular, he argued that in determining whether and how to investigate allegations, the trial judge should be permitted to discriminate between allegations on the basis of their *source* (whether a "courthouse rumor, a report from a court official, an affidavit of a juror, [or] a sworn motion") and their content. *Id.* at 1031–32.

Recently, the First Circuit expressly adopted the *McKinney* rules, but in doing so, it emasculated the "full hearing" requirement by reemphasizing the trial court's discretion "to determine the extent and type of investigation." *United States v. Doe, supra,* 513 F.2d at 711–12. It also softened the "adequately specific findings" requirement by stating that:

> We would add that our interest is more in substance than in form; curative action taken by the trial judge and reflected in the record if it provides an adequate basis for review will not be deemed insufficient because of the absence of formal findings.

*Id.* at 712 n.3.

We decline to adopt the *McKinney* rules to the extent that they deprive the trial court of its discretion and flexibility to respond to a broad range of allegations of juror misconduct and bias. We believe that a trial court, in responding to such charges, should be able to discriminate on the basis of their content, their source, and the nature of the alleged misconduct. Indeed, when we recently reviewed a trial court's response to allegations of juror misconduct, we emphasized that not all types of misconduct carry the same risk of prejudice to the parties. *United States v. Klee, supra,* 494 F.2d at 396.

mine the truthfulness of the allegations of juror misconduct or prejudice. If the allegations are found to be true, the inquiry does not end there, however, because not every incident of juror misconduct or bias requires a new trial. *United States v. Klee,* 494 F.2d 394, 396 (9th Cir.), *cert. denied,* 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974); *Cavness v. United States,* 187 F.2d 719, 723 (9th Cir.), *cert. denied,* 341 U.S. 951, 71 S.Ct. 1019, 95 L.Ed. 1374 (1951); *see United States v. Shahane,* 517 F.2d 1173 (8th Cir.), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975); *United States v. Goliday,* 468 F.2d 170, 171–72 (9th Cir. 1972), *cert. denied,* 410 U.S. 934, 93 S.Ct. 1386, 35 L.Ed.2d 597 (1973). The court must determine if the bias or prejudice amounted to a deprivation of Fifth Amendment (due process) or Sixth Amendment (impartial jury) guarantees. "The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *United States v. Klee, supra,* 494 F.2d at 396. *See also Cavness v. United States, supra,* 187 F.2d at 723.

█ In applying these principles of law, we must constantly bear in mind that reversal of the district court's procedural decisions should occur only if we find an abuse of discretion. *See, e. g., Tillman v. United States, supra,* 406 F.2d at 938; *United States v. Miller, supra,* 381 F.2d at 539; *United States v. Flynn, supra,* 216 F.2d at 372. As Judge (later Mr. Justice) Harlan said in *United States v. Flynn, supra,* 216 F.2d at 372: "All of these matters [of juror bias and evidentiary hearings] were for the trial Court's discretion which, unless we find it clearly abused, we should not disturb." Thus, our task is not to determine if the trial court could have held a more extensive hearing or whether we, had we been the trial judge, would have taken a different approach to the problem. Rather, our review is limited to determining whether the district judge, in view of all the circumstances, so abused his discretion that the defendant must be deemed to have been deprived of his Fifth or Sixth Amendment rights.

█ Applying this test, we conclude that the rulings of the district judge pertaining to the procedure followed should be sustained. Given the content of the allegations, including the seriousness of the alleged bias, and their source, we do not believe that the district judge abused his discretion by not holding a more extensive hearing or by not conducting his investigation during or immediately after the trial. In affirming this aspect of the trial court's decision, however, we do not mean to imply that the approach taken to the problem was ideal.[3] We simply hold that it did not amount to an abuse of discretion.

## II

Turning to the second issue—whether the alleged bias was prejudicial—we also affirm the decision of the trial court. Mrs. Thompson's alleged statement[4] does not refer to Hendrix or to his prosecution. Rather, she was speaking of another, already completed prosecution. Also, her assertion that "she was here to see that they put some of these people away" is unclear because of the ambiguity inherent in the word *these.* Hendrix argues that she was referring to all criminally accused. Taking the statement in context, however, it appears much more likely that she was referring to those who are "absolutely guilty." Obviously, a desire to convict the absolutely guilty is not inconsistent with a juror's duties.

---

**3.** Because of the importance of securing and maintaining an impartial jury, a district court could rarely if ever be reversed for conducting too extensive a hearing if the manner in which the court conducts the hearing does not itself prejudice a party. *Cf. United States v. Doe, supra,* 513 F.2d at 710–11.

In the present case, the district judge could have taken further steps to determine whether the alleged statement was true and, if true, whether Hendrix was actually prejudiced. He could have questioned Mrs. Thompson during or immediately after trial or at the hearing on the motion for a new trial.

**4.** The record tends to indicate that the trial judge took Mrs. Hendrix' and her mother's affidavits at face value and denied Hendrix' new trial motion on the ground that there was an inadequate showing of prejudice.

**1230**

■ Further, Mrs. Thompson's statement came, as the trial court determined, before she was examined, and before she asserted her ability to give Hendrix a fair trial and swore to determine the case impartially. As we have stated before, jurors are presumed to have performed their official duties faithfully. *Cavness v. United States, supra,* 187 F.2d at 723.

> And we adhere to the view that "When twelve jurors sit down to deliberate upon their solemn duty of pronouncing innocence or guilt upon a fellow human each exposes his own particular views of the evidence to the sound judgment of all with the result that tangential views have little chance of survival and practically none of getting eleven approving votes."

*Id., quoting Sue Hoo Chee v. United States,* 163 F.2d 551, 553 (9th Cir. 1947).

Finally, the nature of the alleged bias is different both in degree and kind from that which the courts have traditionally viewed as involving a high risk of prejudice.

> This is not a case that involves "any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury," . . . nor does it involve the influence of the press upon the jury.

*United States v. Klee, supra,* 494 F.2d at 396 (citations omitted). *See also United States v. Shahane, supra,* 517 F.2d at 1178–79.

■ On the basis of these considerations, we are not convinced that Hendrix was denied his right to a trial by an impartial jury. Any juror misconduct or bias did not prejudice Hendrix to the extent that he did not receive a fair trial. *United States v. Klee, supra,* 494 F.2d at 396.

### III

The remaining ten allegations of error are without substantial merit and can be readily resolved.

■ Six of the alleged errors arise from Hendrix' efforts—opposed by the government and denied by the district court—to discover and present as exculpatory evidence a subsequent similar act purportedly tending to show lack of knowledge and criminal intent. Hendrix was convicted for picking up and transporting in his taxicab six illegal aliens on August 19, 1975. Two Border Patrol agents, Burns and Eddington, were involved in intercepting Hendrix and his passengers. On September 6 or 7, 1975, Eddington again stopped Hendrix' taxicab and removed an illegal alien. This stop occurred in the same area as the previous interception, but Hendrix was not arrested. It was this second incident and lack of arrest that Hendrix desired to introduce as a "subsequent similar act."

There was no error. The probative value of the proffered evidence was at best minimal; the danger of confusion of the issues, undue delay and waste of time was great. The judge acted well within his discretion in excluding the evidence. Fed.R. of Evid. 403. Likewise, there was no error in the government's and the district court's response to Hendrix' request for discovery of the subsequent happening. Our review of the record convinces us that the court's discovery order was more than adequate, as was the government's compliance. In any event, Hendrix knew more about the incident than did the government.

■ Hendrix's seventh allegation of error is patently without merit. When stopped by the Border Patrol agents, Hendrix stated that he had received a radio message dispatching him to the area to pick up the passengers he was then carrying. Hendrix argues that he was prejudiced by the "government's failure to obtain and preserve all discoverable evidence of taxicab calls" to that area on the day in question. Yet after his arrest, Hendrix admitted that he received no radio dispatch and that his earlier story was a lie. Hendrix could not be prejudiced by the "government's failure to obtain and preserve all discoverable evidence" of a radio dispatch that never occurred.

■ Three of the claimed errors go to the trial court's refusal to admit an exhibit

and the testimony of certain witnesses called by the defense. In each instance, however, the testimony or evidence was immaterial, was presented without proper foundation or violated the best evidence rule.[5] Hendrix has simply failed to carry his burden of proving that these evidentiary rulings were erroneous and so prejudicial as to require reversal. *See Hamling v. United States,* 418 U.S. 87, 127, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

AFFIRMED.

---

**5.** Hendrix attempted to have a union steward testify about the contents of a memorandum from the Sheriff of San Diego County to taxicab drivers containing instructions on picking up persons of Mexican descent. It was this testimony that was excluded under the best evidence rule. However, Hendrix was permitted to testify as to the contents of the memorandum and, in this regard, develop his defense fully. *See United States v. Holley,* 493 F.2d 581, 583–84 (9th Cir. 1974). Thus, even if exclusion of the steward's testimony were erroneous, it was not prejudicial.