UNITED STATES of America

v.

Angel R. PEREZ.

No. FCR 93–4.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 30, 1993.

David H. Miller, Asst. U.S. Atty., Fort Wayne, IN, for the U.S.

Patrick J. Arata, Fort Wayne, IN, for Angel R. Perez.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant's Motion for New Trial filed on October 26, 1993. The government filed its Response to Defendant's Motion for a New Trial on November 3, 1993. Defendant has not filed a Reply. For the following reasons, defendant's motion will be denied.

### FACTUAL BACKGROUND

Defendant, Angel R. Perez, was convicted by jury verdict on April 26, 1993, of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. At trial, defendant was represented by attorney Patrick J. Arata. Patrick Arata continues to represent defendant and filed the Motion for New Trial on defendant's behalf.

Patrick Arata also represented Pernell Hopkins, a defendant in the case *United States v. Ruby Lamb, et al.*, FCR 92–30, before this court. The trial involving Pernell Hopkins went to trial on June 22, 1993, with Patrick Arata present. On June 23, 1993, out of an abundance of caution, this court declared a mistrial in *Ruby Lamb*.

The court declared a mistrial in *Ruby Lamb* because it was concerned about possible prejudicial statements made by a prospective juror, who was eventually seated as juror number three, that were overheard by another prospective juror when the pool of prospective jurors was forming in the orientation room before any aspect of the trial had begun. The prospective juror who overheard

the statements brought the statements to the court's attention after the jurors had been selected, and after the trial had proceeded one day.

On June 23, 1993, the court held an in camera interview of the prospective juror in order to determine what she had actually overheard and in what context. The prospective juror informed the court that she had come upon a conversation between two other prospective jurors who were discussing deceased Governor Wallace of Alabama. One of the prospective jurors to the conversation, who was eventually seated as juror number three, quoted the Governor as saying, "some of my best friends are niggers," and then affirmed that that was his philosophy as well. The prospective juror who had come upon the conversation interpreted the comments made by the one other prospective juror to indicate a prejudice against blacks.

When the prospective juror relayed this information to the court, she acknowledged that she did not hear any part of the conversation between the other two prospective jurors before the point in time in which she overheard the statement concerning Governor Wallace. She also admitted that the way in which she interpreted the comment may not have been the way in which the prospective juror meant the listener to construe the comment. She further acknowledged that the other two prospective jurors could have been having an innocent conversation. She informed the court that she was not comfortable with anyone using that type of language and simply thought that the court ought to know what she had heard.

After hearing this information, the court promptly brought the incident to the attention of the attorneys involved in the case. The court summoned the attorneys into chambers and summarized the information to which it had become privy during the in camera interview. The court also brought it to the attention of the attorneys that the two prospective jurors who were having the conversation about Governor Wallace in the orientation room had been seated as jurors. The court then recessed the in chambers hearing in order to give the attorneys time to confer with their clients and to propose possible remedial action the court might consider.

Once the attorneys had an opportunity to discuss the matter with their clients they were summoned back into chambers and asked what remedial action, if any, they thought would be appropriate in order to address the statements of juror number three. Three of the defendants immediately moved for a mistrial and the government joined in that motion. One defendant wished to continue without any change in the make-up of the jury, and another defendant wished to continue, but with juror number three replaced by alternate juror number thirteen. Patrick Arata, representing Pernell Hopkins, requested that the trial proceed and indicated that he would not be opposed to striking juror number three and replacing juror number three with alternate juror number thirteen, "or whatever the court would want to do." (Transcript of Proceedings in Chambers of June 23, 1993, p. 25). On the basis of the record before it, the court declared a mistrial stating, "[i]f I've got four parties moving for a mistrial, I don't see how I have any option but to grant it." (Transcript p. 27).

Subsequent to the mistrial of the *Ruby Lamb* case, defendant discovered through information provided by the government that juror number three in the *Ruby Lamb* mistrial had also been seated as a juror in the earlier trial of defendant. Defendant argues that he is entitled to a new trial because juror number three in *Ruby Lamb* also served on the jury in defendant's case. The crux of defendant's argument appears to be that since juror number three in *Ruby Lamb* was possibly prejudiced against blacks and the court declared a mistrial, juror number three may have also been prejudiced against defendant at defendant's trial because of his race, and juror number three's possible prejudice may have resulted in a poisoned jury verdict in defendant's trial requiring a new trial.

### Discussion

█ The Supreme Court of the United States held that the appropriate remedy for allegations of juror partiality is "a hearing in

which the defendant has the opportunity to prove actual bias." *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 944, 71 L.Ed.2d 78 (1982). The Supreme Court elaborated further when it said, "[t]hus, . . . it remains within a trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias ..." *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984) (Blackmun, Stevens and O'Connor concurring).

■ The Seventh Circuit Court of Appeals has also ruled on the matter of alleged juror bias and when a hearing is to be ordered to further investigate possible prejudice. The Seventh Circuit has ruled that due process requires a post-trial hearing when there has been extraneous contacts that may have affected the jury's ability to be fair, *Artis v. Hitachi Zosen Clearing, Inc.,* 967 F.2d 1132 (7th Cir.1992) (citing *Williard v. Pearson,* 823 F.2d 1141, 1148 (7th Cir.1987), *Rushen v. Spain,* 464 U.S. 114, 119–20, 104 S.Ct. 453, 456–57, 78 L.Ed.2d 267 (1983), *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 944, 71 L.Ed.2d 78 (1982)), but that no post-trial hearing is required when the issue is preexisting juror bias. *Artis v. Hitachi Zosen Clearing, Inc.,* 967 F.2d 1132, 1141 (7th Cir. 1992) (citing *United States v. Duzac,* 622 F.2d 911, 913 (5th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980)). Accordingly, the court has exercised its discretion and has not ordered a post-trial hearing.[1]

■ The proper method of requesting a new trial based upon juror bias is a motion for a new trial pursuant to Fed.R.Crim.P. 33. *United States v. Skelton,* 893 F.2d 40 (3rd Cir.), *cert. denied,* 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 29 (1990); *United States v. Salamone,* 800 F.2d 1216, 1226 (3rd Cir.1986). A trial court has wide discretion when deciding a motion for a new trial based on allegations of juror misconduct. *United States v.*

*Jones,* 707 F.2d 1169, 1173 (10th Cir.), *cert. denied,* 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983); *United States v. Hendrix,* 549 F.2d 1225, 1227 (9th Cir.), *cert. denied,* 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977). The trial judge's response to such a motion must be guided by the content of the allegations, including the seriousness and likelihood of the alleged bias, and the credibility of the source. *United States v. Jones,* 707 F.2d at 1173. "Something more than an unverified conjecture is necessary to justify the grant of a new trial where only potentially suspicious circumstances are shown." *United States v. Barber,* 668 F.2d 778, 787 (4th Cir.), *cert. denied,* 459 U.S. 829, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982). Furthermore, post-verdict orders for new trials based upon unproven juror bias should be granted only where the probability of juror bias is so great that in fairness it cannot be ignored. *United States v. Dean,* 667 F.2d 729, 733 (8th Cir.), *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982). Finally, even where juror bias has been shown, not every incident requires a new trial. The court must determine if the bias or prejudice amounted to a deprivation of Fifth Amendment (due process) or Sixth Amendment (impartial jury) guarantees. "'The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.'" *United States v. Hendrix,* 549 F.2d at 1229, (citing *United States v. Klee,* 494 F.2d 394, 396 (9th Cir.)), *cert. denied,* 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974).

■ Defendant points to juror number three's statement regarding Governor Wallace made prior to the *Ruby Lamb* trial as evidence of juror number three's prejudice against defendant. Under the facts presented, defendant has failed to convince this court that juror number three harbored any bias or prejudice against defendant that resulted in an unfair trial.

---

1. "Courts should be reluctant to 'haul jurors in' after they have rendered a verdict and probe for potential instances of bias, misconduct or extraneous influences. These unnecessary post-verdict inquiries may lead to 'evil consequences: subjecting juries to harassment, inhibiting jury room deliberation, burdening courts with meritless applications, increasing temptations for jury tampering and creating uncertainty in jury verdicts.'" *United States v. Piccarreto,* 718 F.Supp. 1088, 1091 (W.D.N.Y.1989) (citing *United States v. Ianniello,* 866 F.2d 540, 543 (2nd Cir.1989)).

First, the court never found that juror number three was biased against blacks when the court conducted its investigation into juror number three's statement made before the *Ruby Lamb* trial. The court declared a mistrial out of an abundance of caution where four of seven parties to that very complex trial moved for a mistrial and where juror number three only made a single remark that could *possibly* be construed as derogatory to blacks. Defendant asks this court to first find that juror number three was biased against blacks and then imply that the same racial bias was also present during defendant's trial almost two months earlier. The court declines to follow defendant's very attenuated reasoning, especially where the court did not find that juror number three was prejudiced against blacks in the first place.

Second, even if the court were to find that juror number three was so prejudiced against blacks as to disqualify him from serving on a jury, defendant does not appear to be black. Although defendant does not address this issue in his brief, and the court does not know the race of defendant, a casual observer would recognize that defendant is not black. The casual observer would most likely believe defendant to be Latino. Thus, defendant's speculative conclusion that juror number three harbors some sort of prejudice against blacks does not support defendant's conclusion that juror number three is also prejudice against others who are not black, i.e., Latinos or others similar in appearance to defendant.

Furthermore, the court finds the present case indistinguishable from *United States v. Hendrix*, 549 F.2d 1225 (9th Cir.), *cert. denied*, 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977). In *Hendrix*, a prospective juror, who was eventually seated as a juror, made statements revealing a bias against and a predisposition to convict criminal defendants. The statements were made prior to the selection of the jury. The defense attorney brought the matter to the attention of the court and requested an investigation in order to determine whether the juror should be removed from the jury panel. The court denied the request, but instead ordered counsel to file affidavits. At the post-trial hearing for a new trial the court denied the motion for a new trial based on the juror's alleged bias.

The court found the timing of when the statement was made a critical factor in determining that no bias of the juror had prejudiced the defendant to the extent that he did not receive a fair trial. The statement of the juror was made before the juror was examined on *voir dire*, and before she asserted her ability to give the defendant a fair trial and swore to determine the case impartially. *Id.* at 1230. The court noted that jurors are presumed to have performed their official duties faithfully and concluded that the allegations of bias did not override this presumption. *Id.* Perhaps if the juror would have made the alleged bias statements after the juror took the oath, the court would have espoused a different view.

The facts of the present case are indistinguishable from *Hendrix*. Juror number three made the alleged prejudicial statements when the jury pool was forming in the orientation room and before he swore to execute his duty impartially. During *voir dire* examination in *Ruby Lamb*, the court specifically instructed the prospective jurors that they would have to decide the case on the facts presented and in an impartial manner. No juror indicated that he or she could not so decide the case. Therefore, as in *Hendrix*, the allegation of a possible prejudice against blacks revealed almost two months after defendant's trial does not override the presumption that juror number three fulfilled his duty satisfactorily. *See also, United States v. Caro–Quintero*, 769 F.Supp. 1564, 1583–84 (C.D.Cal.1991). Finally, the court quotes *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), as it summarizes the posture of the present case.

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising position. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or in-

fluences that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Id.* at 217, 102 S.Ct. at 946.

The court holds that the unfounded conclusion that juror number three was prejudiced against blacks at the *Ruby Lamb* trial does not support the speculative conclusion that juror number three is prejudiced against others of different races, such as defendant. Moreover, the statement made by juror number three was made before he swore to faithfully and impartially execute his duty as a juror.

## CONCLUSION

For the foregoing reasons, defendant's Motion for New Trial filed on October 26, 1993, is hereby DENIED.