Glenn MONROIG, et al., Plaintiffs,

v.

RMM RECORDS & VIDEO CORP., et al., Defendants.

No. CIV. 97–2764 SEC JA.

United States District Court, D. Puerto Rico.

Sept. 7, 2000.

Alberto N. Balzac–Colom, Hato Rey, PR,
Alfredo Castellanos–Bayouth, Hato Rey, PR,

Kenneth C. Suria–Rivera, San Juan, PR, for Defendants.

Jose A. Hernandez–Mayoral, San Juan, PR, Juan H. Saavedra–Castro, San Juan, PR, for Plaintiffs.

## OPINION AND ORDER

ARENAS, United States Magistrate Judge.

On June 19, 2000, the defendants RMM and Ralph Mercado filed both an original motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a) and an amended motion for new trial, based on three arguments. (Docket Nos. 77 and 78, respectively.) The defendants allege (1) that the district court committed reversible error in denying defendants' motion for a mistrial without conducting an investigation regarding jurors' comments; (2) that the court committed reversible error by permitting the plaintiff to perform the song "Yo Soy" to the members of the jury; and (3) that the jury's verdict is "grossly excessive" and "shocking to the conscience" of the court, and that upholding it would constitute a miscarriage of justice. (Defendants' Amended Motion for a New Trial, Docket No. 78, at 1.)

### I. Standard for Motions Pursuant to Rule 59(a)

■ Pursuant to Rule 59(a)[1] of the Federal Rules of Civil Procedure, a jury's verdict on the facts should only be overturned under the most compelling of circumstances. *Velazquez v. Figueroa–Gomez*, 996 F.2d 425, 427 (1st Cir.), *cert. denied*, 510 U.S. 993, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993); *Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 811 (1st Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988). A trial judge may not upset a jury's verdict by granting a new trial merely because he or she might have decided the case differently. *See Velazquez v. Fi-*

*gueroa–Gomez*, 996 F.2d at 428. A new trial should only be granted if the court believes that "the outcome is against the clear weight of the evidence such that upholding it will result in a miscarriage of justice," and this decision lies strictly within the discretion of the court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Velazquez v. Figueroa–Gomez*, 996 F.2d at 428.

With this in mind, I consider the issues raised by the defense.

### II. Did the district court err in denying defendants' motion for a mistrial based on jurors' comments?

■ A trial judge has both a great responsibility and a wide discretion to give meaning to the guarantee of an impartial jury panel. *United States v. Hendrix*, 549 F.2d 1225, 1227 (9th Cir.), *cert. denied*, 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977). A district court has broad, though not unlimited, discretion to determine the extent and nature of its inquiry into the allegations of juror bias. *United States v. Corbin*, 590 F.2d 398, 400 (1st Cir.1979); *United States v. Doe*, 513 F.2d 709, 712 (1st Cir.1975).

■ In determining whether a jury has been biased or tainted, the trial court has discretion to fashion any appropriate procedure to determine whether the misconduct has actually occurred and whether it was prejudicial. *United States v. Ortiz–Arrigoitia*, 996 F.2d 436, 443 (1st Cir.1993), *cert. denied*, 511 U.S. 1003, 114 S.Ct. 1368, 128 L.Ed.2d 45 (1994). It is within the trial court's discretion whether to and when to hold an evidentiary hearing, either strictly structured or otherwise, on allegations of juror misconduct or bias. *United States v. Boylan*, 898 F.2d 230, 258–59 (1st Cir.), *cert. denied*, 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990); *United States v. Hendrix*, 549 F.2d at 1227. Its primary obli-

---

1. Fed.R.Civ.P. 59(a) reads, in its relevant parts: A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States.

gation is not to conduct such a hearing, but rather to fashion a responsible procedure for ascertaining whether misconduct actually occurred, and if so, whether it was prejudicial. *United States v. Boylan,* 898 F.2d at 258. The court is neither shackled to a rigid set of rules and procedures that compel any particular form or scope of inquiry, nor does due process require a new trial every time it is alleged that a juror has been placed in a compromising situation. *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *United States v. Ortiz–Arrigoitia,* 996 F.2d at 443. The scope of such an inquiry should be limited to what is absolutely necessary. *See United States v. Boylan,* 898 F.2d at 258.

As a matter of common sense, a trial judge making this type of decisions will necessarily be directed by the content of the allegations. *United States v. Hendrix,* 549 F.2d at 1227–28.

On Thursday, May 25, 2000, the parties learned through a note from the jury that one of the jurors had to be excused because he had contracted conjunctivitis. (Defendants' Motion Requesting New Trial, Docket No. 78, at 2.) At this point the alternate jurors had already been dismissed. *Id.* After the court gave the parties the option of briefly halting the jury deliberations until the juror could come back or to continue the deliberations with only seven jurors, both parties agreed to continue with the remaining seven jurors and the jury was excused for deliberations. *Id.* The jury deliberated on Thursday until the close of the working day. *Id.* The next day, Friday, May 26, 2000, the jury forewoman, contacted the court stating that the jury would like to have the excused juror reincorporated as a member of the jury. *Id.* The plaintiffs, as well as the defendants, informed the court that they would have no objection to the jury's request. *Id.* at 3, 4.

During the reinstatement proceedings, and after all jurors had agreed to the reentry of the excused juror, certain members of the jury stated that "the excused juror's medical condition was an allergic condition and that the same would not [represent] a risk to the health of the other jurors." *Id.* at 4. At the time, defendants' counsel did not object. The entire set of jury instructions was then re-read.

Defendants' counsel later requested the court to approach the bench and raised his concern regarding the abovementioned jurors' comment, alleging that it was evident that there had been communication between the jury and the excused juror regarding his medical condition. *Id.* at 5. The defendants also stated that they "had no choice but to move for a mistrial," and that, upon their mention of this matter, the plaintiffs' counsel "reacted abruptly." *Id.* The court informed the defendants that it "did not see how those statements would affect in any way defendants' substantive rights." *Id.*

■ When a non-frivolous, colorable claim is made that a jury may be biased or tainted, the district court must determine the type of investigation, if any, which must be mounted to determine (1) whether an alleged incident occurred and, if so, (2) whether it was prejudicial. *United States v. Ortiz–Arrigoitia,* 996 F.2d at 442; *United States v. Boylan,* 898 F.2d at 258; *United States v. Anello,* 765 F.2d 253, 258–59 (1st Cir.), *cert. denied,* 474 U.S. 996, 106 S.Ct. 411, 88 L.Ed.2d 361 (1985).

■ In the first instance, defense counsel alleges that an event "might" have occurred which, though unrelated to the merits of the case, could allegedly have biased the jury. Based on the tentative nature of the allegation and on the highly remote possibility of bias, the court can properly conclude that the allegation is frivolous and thus not require further inquiry. *See United States v. Williams,* 809 F.2d 75, 85 (1st Cir.1986), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 377 (1987).

Moreover, even if it had not been a frivolous claim, the defendants themselves acknowledge that the jurors' statements "completely contradicted the medical excuse that had been submitted by the excused juror to the Court," but they insist that the statements "affirmed that a communication between the jury and [the] excused juror had taken place." (Docket No. 78, at 5.) Therefore, it seems like a logical stretch that if the

jurors' comments contradict the diagnosis duly presented to the court, they would evidence "that a communication between the jury and [the] excused juror" took place. If it cannot be concluded that the event occurred, there does not have to be a determination concerning the possibility of prejudice. But even if such a communication did in fact occur, *United States v. Gaston–Brito*, cited for support by the defendants, clearly states that an authorized communication between a juror and [another party associated with the case] is deemed prejudicial unless it is completely unrelated to the case or otherwise shown to be harmless. *United States v. Gaston–Brito*, 64 F.3d 11, 13 (1st Cir.1995). As I stated when the issue was first called to my attention, in a copyright infringement suit, a juror's medical condition, whether an allergic reaction or conjunctivitis, is a matter completely unrelated to the merits, which would not affect the defendants' substantive rights.[2]

The motion for a new trial based on this ground is thus DENIED.

### III. Did the trial court err by permitting the plaintiff to perform the song "Yo Soy" to the members of the jury?

Plaintiff Glenn Monroig requested and was granted permission to play his song "Yo Soy" to the jury.

■ The defense strenuously objected to the actual performance, arguing that such a performance would appeal to the emotions of the jurors, and that the song was available in CD and could be played for the jury just as easily. I allowed the song to be played live without articulating the basic reason for allowing the same: relevancy to the issue of unauthorized alteration of the original score. That "Yo Soy" might be available in another form does not *a fortiori* require that the court require or adopt such a form. As plaintiff points out, the relevancy hurdle is low. *See Fitzgerald v. Expressway Sewerage Constr. Inc.*, 177 F.3d 71, 75 (1st Cir.1999); *United States v. Saccoccia*, 58 F.3d 754, 780 (1st Cir.1995). A weighing of the actual singing of the song "Yo Soy" against the rubric

of Rule 403 does not call for its exclusion for any of the reasons noted in 403. There was no unfair prejudice and the fact that the song described the relationship between the author and his father does not mean that it was presented with the intention of unduly influencing the jury. Rather, the live singing showed the differences between the song as played and written by the author, and how it was unfaithfully reproduced, thus leading to federal copyright and local moral rights violations. That a juror or more than one juror might have moved to the music does not suggest that the jury, as individuals or as a whole, were so moved emotionally that they threw reason and intellect aside, and cast their votes based upon musically-induced whimsical abandon.

The motion for new trial based upon the live singing of the song "Yo Soy" to the jury is DENIED.

### IV. Was the jury's verdict "grossly excessive" or "shocking to the conscience of the court," and would upholding it constitute a miscarriage of justice?

#### a) Standard of review for a claim of excessive damages

The standard of review for a claim of excessive damages places an enormous burden on the party challenging the award. *Velazquez v. Figueroa–Gomez*, 996 F.2d at 428. The decision of whether to grant a new trial based upon this criterion falls squarely within the trial court's discretion. *See id.* at 428; *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. at 36, 101 S.Ct. 188. Only an abuse of discretion will trigger reversal of a denial of a motion for new trial. *Velazquez v. Figueroa–Gomez*, 996 F.2d at 428 (quoting *Wells Real Estate v. Greater Lowell Bd. of Realtors*, 850 F.2d at 811). Such deference to the trial court's decision is particularly appropriate in cases in which the jury's verdict is challenged as against the weight of the evidence, because "a jury's verdict on the facts should only be overturned in the most compelling of circumstances." *Wells Real Estate*

---

2. The issue of the request for the Excel 2000 program by the jury is noted in passing. Again, while there is a hint of skullduggery, the connec-

tion between the conjunctivitis of a senior cost analyst who sits on a jury and prejudice to the defense is, at best, over-refined.

*v. Greater Lowell Bd. of Realtors,* 850 F.2d at 811.

A trial court's discretion concerning motions for new trials is limited; a trial judge may grant a new trial only if he believes that "the outcome is against the clear weight of the evidence such that upholding it would result in a miscarriage of justice." *Conway v. Electro Switch Corp.,* 825 F.2d 593, 598–99 (1st Cir.1987). Even if the trial court could have reached a different verdict, it shall not upset a jury's verdict which is based on the evidence at trial. *See Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors,* 850 F.2d at 811. Moreover, in determining the excessiveness of an award, the focus of the inquiry must be the evidence presented at the trial in question, not a comparison of the monetary amount of other awards. *Havinga v. Crowley Towing & Transp. Co.,* 24 F.3d 1480, 1488 (1st Cir. 1994); *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 579 (1st Cir.1989). Absent a most unusual case, a court will not overturn a jury award which has substantial basis in the evidence presented at trial merely because the amount of the award is out of line with other cases similar in nature. *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d at 579–80.

The reviewing forum will view the evidence in the light most favorable to the prevailing party, and as long as there is some relationship between the claim and the award, it will be allowed to stand, unless the award is "grossly excessive," "inordinate," "shocking to the conscience of the court," or so high that it would be a denial of justice to allow it to stand. *Smith v. Kmart Corp.,* 177 F.3d 19, 30 (1st Cir.1999); *Velazquez v. Figueroa–Gomez,* 996 F.2d at 428; *Betancourt v. J.C. Penney,* 554 F.2d 1206, 1207, 1209 (1st Cir.1977).

## b) Recovery of monetary damages under the Copyright Act of 1976

Under the Copyright Act of 1976, a copyright owner who has established infringement has the right to recover either his damages (or his lost profits) or all of the infringer's profits attributable to the infringement and to any ascertainable indirect profits, whichever is greater, or both, except if that results in double-counting of the same economic transaction. 17 U.S.C. § 504(b) [3]; *see Eales v. Environmental Lifestyles, Inc.,* 958 F.2d 876, 880 (9th Cir.), *cert. denied,* 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 541 (1992); *Deltak, Inc. v. Advanced Sys., Inc.,* 767 F.2d 357, 363 (7th Cir.1985).

If the plaintiff elects to recover the infringer's profits, its burden is minimal and the plaintiff must only prove the infringer's gross receipts. *Data Gen. v. Grumman Sys. Support,* 36 F.3d 1147, 1173 (1st Cir. 1994). The burden then shifts to the defendant infringer to demonstrate what portion of its revenues represents profits, and what portion of its profits is not traceable to the infringement. *Id.* at 1173; *Rogers v. Koons,* 960 F.2d 301, 313 (2nd Cir.), *cert. denied,* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992); *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505, 514 (9th Cir.1985), *cert. denied,* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990); *Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* 754 F.2d 826, 828–29 (9th Cir.1985). Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff. *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d at 514.

Carlos Gutierrez, Director of International Affairs of RMM, oversaw international sales for RMM Records. His testimony, as sup-

**3.** Title 17 U.S.C. § 504 reads in part as follows:
(a) In General.—Except as otherwise provided by this title, an infringer of copyright is liable for either—
(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or
(2) statutory damages, as provided by subsection (c).
(b) Actual Damages and Profits.—The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

ported by documentary evidence, reflects that RMM licensed the master recording to foreign distributors and was paid varying five and six-digit amounts (totaling about $2,000,-000) for the catalogs and licenses in Venezuela, Japan, Chile, Argentina, Perú, Spain, Portugal, Ecuador, Uruguay, and México. *See* Exhibits 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 66.

While plaintiffs Monroig and Mamoku met their burden of presenting documentary evidence establishing the amount of defendant RMM's gross receipts, the defendants failed to present the jury with specific proof of deductible costs, such as production costs or the apportionment of profits not attributable to the infringement, which might have reduced the amount of damages granted, except for one instant when Ralph Mercado, President of RMM Records, testified that it cost him $200,000 to produce and promote a film "Del Son a La Salsa." Notwithstanding this instance, if the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits. *See, e.g., Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* 864 F.2d 668, 669 (9th Cir.1989); *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d at 514; *Russell v. Price,* 612 F.2d 1123, 1130–31 (9th Cir.1979), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980). Absent such specific evidence as would have supported any deductions in favor of the defendants, this forum is bound to uphold the jury's award of economic damages. Moreover, in terms of the jury's award for moral rights violations committed within Puerto Rico ($1,137,500), Venezuela ($500,-000), Chile ($500,000), Panamá ($100,000), Honduras ($100,000), Nicaragua ($100,000), Costa Rica ($100,000), Guatemala ($100,000), Ecuador ($500,000), Perú ($500,000), México ($500,000), Spain ($250,000), Portugal ($250,-000), Japan ($500,000), Uruguay ($500,000), Colombia ($500,000), this forum has no rationale basis upon which to alter those awards. Since a court is not at liberty to ask a jury how it reached a particular figure, and is often left to speculate in relation to the minutiae of a jury's calculation, it generally respects a jury verdict. Translating legal damages into money damages is a matter

"peculiarly within a jury's ken." *Smith v. Kmart,* 177 F.3d at 30; *Toucet v. Maritime Overseas Corp.,* 991 F.2d 5, 11 (1st Cir.1993) (quoting *Milone v. Moceri Family, Inc.,* 847 F.2d 35, 37 (1st Cir.1988)). The judgment of a jury is given wide latitude and will be upheld so long as it does not exceed some "rational appraisal or estimate of the damages that could be based on the evidence before the jury." *Blinzler v. Marriott Int'l Inc.,* 81 F.3d 1148, 1161 (1st Cir.1996). In relation to compensation awarded due to a violation of moral rights, a court's ambit of review is even more limited.

The motion for new trial based upon the verdict's representing a grossly excessive award is DENIED.

In view of the above, and finding that the jury's verdict and award were sufficiently supported by the evidence presented at trial, I DENY the defendants' motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a) in its entirety.